UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ERIC KIRCHEIN, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 0:16-cv-60090-RNS |
| vs. ) ) | |
| PET SUPERMARKET, INC., ) ) | |
| Defendant. ) ) | |

**DEFENDANT PET SUPERMARKET, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STAY**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant, Pet Supermarket, Inc. ("Pet Supermarket"), moves to dismiss Plaintiff's Complaint. As discussed below, Plaintiff lacks standing to maintain his lawsuit. His Complaint also fails to state a claim under Rule 12(b)(6), which provides an additional grounds for dismissal. Alternatively, if the Court does not dismiss the case, Pet Supermarket moves for a stay of the case pending the issuance of the United States Supreme Court's opinion in the *Robins v. Spokeo, Inc.* case.

**INTRODUCTION**

This case is one in a long line of similar cases brought under the Fair and Accurate Credit Transactions Act ("FACTA") amendments to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), in which Plaintiff alleges that he was given a printed store receipt that willfully violated FACTA by displaying too many digits of his credit card number when he made a purchase at a Pet Supermarket store in Sunrise, Florida on January 6, 2016. Plaintiff merely alleges that the supposed FCRA violation gives rise to the "elevated risk" of identity theft (Doc. 1, ¶ 1). That, however, is not an actual or imminent injury sufficient to satisfy Article III's "injury-in-fact" requirement for standing, as numerous courts have held in light of recent

Supreme Court precedent.  Nor does Plaintiff satisfy the other two requirements necessary to establish Article III standing.  Accordingly, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(1).

Alternatively, dismissal is appropriate under Rule 12(b)(6).  The Plaintiff asserts only one claim – a willful violation of FACTA/FCRA, but he does not adequately plead willfulness.  Accordingly, in the (unlikely) event that Plaintiff is deemed to have Article III standing to sue in the first instance, the Court should dismiss the Complaint under Rule 12(b)(6).

Finally, if the Court does not dismiss the Complaint, then all proceedings should be temporarily stayed.  Numerous courts in this District and Circuit have granted temporary stays in FACTA and similar cases pending the issuance of the Supreme Court's forthcoming decision in the *Spokeo* case.  This Court should rule likewise.

## **RELEVANT FACTUAL BACKGROUND**

### I. THE ALLEGED STATUTORY VIOLATION

Plaintiff's factual allegations, as they pertain to him, are sparse and straightforward.  He alleges that, on January 6, 2016, he used a credit card to make a purchase at a Pet Supermarket store at 2696 N. University Drive, Sunrise, Florida 33323. (Doc. 1, ¶ 24.)  At the conclusion of the transaction, Plaintiff alleges, he was given a computer-generated cash register receipt that published the first six and the last four digits of his credit card.  (*Id*., ¶ 25.)  That event, Plaintiff alleges, willfully violated FACTA.  (*Id*., ¶¶ 42-43.)

Plaintiff avers that the alleged statutory violation constitutes an "elevated risk of identity theft" (*id.*, ¶ 1), but he does not allege that he was an *actual victim* of identity theft.  He also makes the conclusory assertion that Pet Supermarket "has caused consumers actual harm because a portion of the sale from credit or debit card transaction[s] is intended to protect consumer data,

including the masking of credit or debit card numbers as required by both state and federal laws" (*id.*) – a non-sensical assertion devoid of any factual or legal basis.

## II.   PLAINTIFF'S CLAIM AND HIS PROPOSED CLASS

Plaintiff's sole claim alleges that Pet Supermarket willfully violated FACTA. Specifically, Plaintiff purports to maintain his claim under § 1681c(g) of the FCRA, which states: "No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." (Doc. 1, ¶ 56 (quoting 15 U.S.C. § 1681c(g)).) Plaintiff, therefore, seeks only to recover statutory damages under FACTA/FCRA pursuant to 15 U.S.C. § 1681n, as well as punitive damages, among other relief. (*Id.*, ¶ 62.)

Plaintiff also purports to bring a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). (*Id.*, ¶ 51.) He defines his proposed class (*id.*, ¶ 45) as:

> (i)   All persons in the United States (ii) who, when making payment for good[s] or services at a Pet Supermarket retail store (iii) made such payment using a credit or debit card (iv) and were provided with a point of sale receipt (v) which displayed more than the last 5 digits of said credit or debit card number (vi) within the two (2) years prior to the filing of the Complaint.

## ARGUMENT

### I.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED.

#### A.   Plaintiff's Complaint Should Be Dismissed Pursuant To Rule 12(b)(1).

A party invoking federal jurisdiction bears the burden of establishing standing. *See Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1003 (11th Cir. 2004). That burden includes pleading sufficient factual information to support a finding of Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) "A plaintiff must demonstrate standing for each claim he seeks to press and for each claim of relief sought." *Wollschlaeger v. Governor of the*

*State of Fla.*, __ F.3d __, 2015 WL 8639875, *5 (11th Cir. Dec. 14, 2015) (quotations omitted). As *Lujan* held, "the irreducible constitutional minimum of standing contains three elements": (1) "plaintiff must have suffered an injury in fact"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely … that the injury will be redressed by a favorable decision." 504 U.S. at 560-61 (internal quotations and citation omitted); *see also CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (quoting *Lujan*); *Lacasa v. Townsley*, 863 F. Supp. 2d 1231, 1234 (S.D. Fla. 2012) (quoting *Lujan*); *see generally Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (reciting the three components of Article III standing). Plaintiff satisfies none of those three requirements here.

### 1. Plaintiff Does Not Adequately Plead An "Injury-In-Fact."

For purposes of Article III standing, an injury-in-fact consists of an "invasion of a legally protected interest which is (a) concrete and particularized, as opposed to merely abstract, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560; *see also Alhassid v. Bank of America, N.A.*, 307 F.R.D. 684, 692 (S.D. Fla. 2015) (same). Plaintiff pleads neither a "concrete and particularized" injury nor an "actual" or "imminent" injury here.[1]

#### a. Courts Overwhelmingly Have Rejected Arguments That An "Elevated Risk Of Identity Theft" Suffices To Establish An Injury-In-Fact.

In the absence of an actual injury, the only way Plaintiff can satisfy the "injury-in-fact" prong of the Article III standing test is to allege that a "concrete" or "particularized" injury is

---

[1] Certainly, Plaintiff fails to allege a legally recognizable "actual" injury. Plaintiff attempts to create actual harm where none exists by alleging that "[d]efendant has caused consumers actual harm because a portion of the sale from credit or debit card transaction [sic] is intended to protect consumer data, including the masking of credit card or debit card numbers as required by both state and federal laws." (Doc. 1, ¶ 1.) Plaintiff does not allege that he would otherwise be entitled to receive this "portion of sale," nor otherwise suggest that he was the victim of identity theft as a result. Accordingly, the first method of establishing injury-in-fact – "an actual injury" – is wholly absent.

"imminent" or "certainly impending." His allegations do not remotely satisfy that standard; indeed, putting aside Plaintiff's specious "portion of the sale" claim, the only potential injury Plaintiff pleads is the risk of increased identity theft, and his allegations are sheer speculation:

- "all consumers who purchased products from Defendant using a credit or debit card [and] suffered violations of Section 1681c(g), have been uniformly burdened with an *elevated risk* of identity theft." (Doc. 1, ¶ 1 (emphasis added).)

- "As a result of Defendant's willful violations of the FCRA, Plaintiff and members of the class continue to be exposed to an elevated risk of identity theft." (*Id.*, ¶ 62.)

The insurmountable problem for Plaintiff is that he has not alleged that he has been the victim of identity theft or an attempted identity theft, or even that the supposedly non-compliant receipt fell into the hands of any third party; potential identity theft is the only "injury" that is implicated by the Complaint's allegations. In *Clapper*, the Supreme Court's most recent discussion of standing in the privacy context, the Court restated the black-letter concepts of injury-in-fact and held that "allegations of possible future injury" are insufficient to establish standing. *Clapper*, 133 S. Ct. at 1147 (emphasis and quotations omitted). The Court added that to establish Article III standing, "the threatened injury must be *certainly impending* to constitute injury in fact." *Id.* at 1147 (emphasis original; quotations omitted).[2]

Since the issuance of the *Clapper* opinion, and relying heavily on the standing principles the Supreme Court articulated in that case, federal courts overwhelmingly have rejected the proposition that an increased risk of identity theft is sufficient to satisfy the injury-in-fact requirement for the purposes of establishing Article III standing. As one court recently held:

---

[2] Because of *Clapper*'s rejection of "future injury" and its affirmance of the "certainly impending" standard of injury-in-fact, cases that predated the *Clapper* ruling and held contrary to *Clapper*, *see, e.g.*, *Manno v. Healthcare Revenue Recovery Group*, 289 F.R.D 674 (S.D. Fla. 2013), are of, at best, limited value.

- 5 -

"The majority of courts dealing with data-breach cases post-*Clapper* have held that absent allegations of actual identity theft or other fraud, the increased risk of such harm alone is insufficient to satisfy Article III standing." *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 955, (D. Nev. 2015) (citing numerous cases).

This Court should join the many other courts that have held that an increased risk of identity theft is insufficient to establish an injury-in-fact that would confer Article III standing. *See In re SuperValu, Inc.*, 2016 WL 81792, *5 (D. Minn. Jan. 7, 2016) ("Plaintiffs' allegations of future harm do not satisfy the injury-in-fact requirement for Article III standing."); *Whalen v. Michael Stores Inc.*, __ F. Supp. 3d __, 2015 WL 9462108, *4 (E.D.N.Y. Dec. 28, 2015) ("Defendant argues, and the Court agrees, that these allegations of future harm are too remote to establish an injury-in-fact for Article III purposes."); *Zappos*, 108 F. Supp. 3d at 958-59 ("The Court therefore finds that the increased risk of identity theft and fraud stemming from Zappos's security breach does not constitute an injury-in-fact sufficient to confer standing."); *Green v. eBay, Inc.*, 2015 WL 2066531, *5 (E.D. La. May 4, 2015) ("Thus, the potential threat of identity theft or identity fraud, to the extent any exists in this case, does not confer standing on Plaintiff to pursue this action in federal court."); *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 366 (M.D. Pa. Mar. 13, 2015) ("Plaintiffs' alleged harm – that they are now at an increased risk of identity theft – does not suffice to allege an imminent injury."); *Peters v. St. Joseph Serv. Corp.*, 74 F. Supp. 3d 847, 854 (S.D. Tex. 2015) ("[Plaintiff] argues that the increased risk he faces of future identity theft/fraud constitutes 'imminent' injury. The Court cannot agree that he faces a 'certainly impending' or 'substantial' risk of identity theft/fraud as Article III requires … ."); *In re SAIC Backup Tape Data Theft Lit.*, 45 F. Supp. 3d 14, 25 (D.D.C. 2014) ("Plaintiffs begin by asserting that an increased risk of harm alone constitutes an injury sufficient to confer standing to sue. … That increased risk, they

maintain, in and of itself confers standing. But, as *Clapper* makes clear, that is not true."); *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 876 (N.D. Ill. 2014) ("*Clapper* compels rejection of [plaintiff's] claim that an increased risk of identity theft is sufficient to satisfy the injury-in-fact requirement for standing."); *Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646, 654 (S.D. Ohio 2014) ("In this case, an increased risk of identity theft, identity fraud, medical fraud, or phishing is not itself an injury-in-fact because Named Plaintiffs did not allege – or offer facts to make plausible – an allegation that such harm is 'certainly impending.'").

As another district court in this Circuit has held: "Plaintiffs have not directed the court's attention to, nor has the court found, any precedent for holding that Plaintiffs' allegations, without further evidence of identity theft, are sufficient to establish either an actual or imminent risk of injury-in-fact for Article III standing." *Willingham v. Global Payments, Inc.*, 2013 WL 440702, *7 (N.D. Ga. Feb. 5, 2013).[3] In short, this case is not meaningfully distinguishable from the numerous privacy-related cases where personal information allegedly was exposed to the public. This Court should follow these cases to hold that the increased risk of identity theft does not constitute an injury-in-fact sufficient to confer standing under Article III.[4]

---

[3] Significantly, many of the above-cited cases dismissing claims for lack of standing asserted, among other claims, violations of the FCRA, just as Plaintiff does here. *See Green*, 2015 WL 2066531, *1 (FCRA and other federal and state claims); *Peters*, 74 F. Supp. 3d at 849 (FCRA and "various state and common law claims"); *In re SAIC*, 45 F. Supp. 3d at 21 ("twenty separate causes of action," including FCRA); *Strautins*, 27 F. Supp. 2d at 874 ("willful" and "negligent" violations of FCRA plus common-law theories); *Galaria*, 998 F. Supp. 2d at 649 (FCRA plus common-law claims).

[4] Simply because Plaintiff proposes a class action and alleges that Pet Supermarket's purported statutory violation placed all of its customers at "an elevated risk of identity theft" (Doc. 1, ¶ 50) does not relieve him of the burden of establishing Article III standing. Indeed, the "foregoing principles apply with equal force in the class action context." *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1315 (N.D. Ga. 2012). Accordingly, "if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Thus, "a plaintiff cannot include class allegations in a complaint and expect to

### b.      The Concepts Of Constitutional Standing And Statutory Standing Cannot Be Combined.

Plaintiff's allegations improperly meld the concepts of "statutory standing" and "constitutional standing."  To be sure, Congress can enact a statute, such as FACTA, and create a remedy for violations of that statute, such as statutory damages in the range of $100-$1,000 for willful violations.  But those allegations would only create statutory standing; they would not constitute an "injury-in-fact" sufficient to satisfy Article III.

Stated simply, "[w]hen a plaintiff alleges injury to rights conferred by a statute, two separate standing-related inquiries pertain:  whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing)."  *Katz v. Pershing, LLC*, 672 F.3d 64, 75 (1st Cir. 2012).   Thus, the better reasoned cases have properly distinguished statutory standing and constitutional standing, and the existence of the former does not warrant a finding of the latter.  *See David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013) (rejecting plaintiffs' assertion that the violation of legal rights granted them by statute was sufficient to constitute an injury-in-fact for Article III standing:  "this theory of Article III standing is a non-starter as it conflates statutory standing with constitutional standing" because "we have subject matter jurisdiction … only where appellants have both statutory *and* constitutional standing.") (emphasis original).   Plaintiff may plead statutory standing in the Complaint, but he has not adequately pleaded constitutional standing.

Stated differently, for purposes of injury-in-fact, it is not the label of the statute or the duty allegedly violated ("FACTA," etc.), it is the *injury* the person purportedly sustained because that statute or legal duty was violated that controls the inquiry – and that is where Plaintiff's

---

be relieved of personally meeting the requirements of constitutional standing, even if the persons described in the class definition would have standing themselves to sue." *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (quotations and citation omitted).

allegations fail.  And that is also why the "risk of identity theft" decisions in the data breach cases are so important.  In those cases, the only "injury" the plaintiffs could assert was a "fear" or "risk" of identity theft.  As held in the many cases cited above, the courts uniformly have rejected the argument that a risk of identity theft constitutes an injury-in-fact for purposes of Article III standing.  Because that is the only "injury" Plaintiff alleges here, those cases fully apply and direct the dismissal of Plaintiff's Complaint due to the lack of Article III standing.

The bottom line is that Plaintiff alleges only that Pet Supermarket committed a statutory violation of FACTA.  Those facts, if proven, would supply statutory standing.  But they would not, standing alone, supply Article III standing.  The notion that a plaintiff can establish Article III standing simply because Congress passed a statute creating a remedy if the statute was violated has been expressly rejected by the Supreme Court.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("[T]he requirement of injury-in-fact is a hard floor of Article III jurisdiction that cannot be removed by statute.").  And it should be rejected here.  Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(1).

### 2. Plaintiff's Allegations Do Not Establish The Causal Connection And "Redressability" Requirements Of Article III Standing.

Plaintiff's failure to establish the injury-in-fact component of Article III standing eliminates any need for the Court to examine the "traceability" or "redressability" elements.  *See Green*, 2015 WL 2066531, n.56 ("Because the Court finds Plaintiff has not satisfied the injury-in-fact element required for him to have standing, the Court need not address the traceability or redressability elements.").  Regardless, Plaintiff does not satisfy the other two components of Article III standing.

#### a. Plaintiff Does Not Satisfy "Traceability" Or "Causation."

"The second element of standing, causation, requires 'a causal connection between the

injury and the conduct complained of.'" *In re SAIC*, 45 F. Supp. 3d at 31 (quoting *Lujan*, 504 U.S. at 560). The harm alleged must be "fairly … traceable to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Plaintiff's allegations fall well short of that standard.

Squarely on point is *Peters*, a class action brought under the FCRA where the court recited plaintiff's argument that her "injuries are traceable to the FCRA because they stem from [defendant's] failure to comply with the requirements of the statute. He contends that as a result of this failure, acts of identity theft/fraud were (and continue to be) perpetrated against her, albeit by *unknown third parties*, for which [defendant] should be held responsible." *Peters*, 74 F. Supp. 3d at 857 (emphasis original). Holding that the plaintiff did not satisfy the causation component of standing, the court held that the plaintiff's causation allegation was "conclusory and fails to account for the sufficient break in causation caused by opportunistic third parties. The injuries, to the extent that they meet the first prong [i.e., injury-in-fact] are the result of the independent action of a third party and therefore not cognizable under Article III." *Id.* (quotations omitted). That holding applies with equal force here and provides an independent basis for dismissal under Rule 12(b)(1).

### b. Plaintiff Does Not Satisfy The Redressability Requirement.

The third and final element of standing, redressability, "requires that it be likely, as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision." *In re SAIC*, 45 F. Supp. 3d at 33 (quoting *Lujan*, 504 U.S. at 561) (additional quotations omitted); *see also Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 75 n.20 (1978) (describing redressability as "a substantial likelihood that the relief requested will redress the injury claimed") (internal quotations omitted). Here, as the *In re SAIC* court held, citing the

*Clapper* "certainly impending" requirement, "it would be entirely implausible to assume that a massive identity-theft scheme is currently in progress or is certainly impending." *Id*. at 34. Indeed, Plaintiff's allegations simply speculate on a worst-case scenario (i.e., a rash of identity thefts) that will never occur; in any event, there is no allegation that a single identity theft, or even attempted identity theft, has occurred resulting from the alleged statutory violation.

Furthermore, Plaintiff's failure to allege any quantifiable loss from Pet Supermarket's alleged FACTA violation further defeats a finding of redressability. In *Peters*, observing that the plaintiff had "not alleged any quantifiable damage or loss he has suffered as a result of" the defendant's alleged violation, the court held that "[e]ven if the above injuries were traceable to [defendant's] alleged failures under the FCRA, it is not likely that a favorable decision from this Court would redress the harm he has experienced." 74 F. Supp. 3d at 857. That holding equally applies here, and further justifies dismissal of Plaintiff's Complaint under Rule 12(b)(1).

**B.    Plaintiff's Complaint Should Be Dismissed Pursuant To Rule 12(b)(6).**

Even if Plaintiff could establish Article III standing, his Complaint should be dismissed pursuant to Rule 12(b)(6) because it fails to adequately allege a willful FACTA violation. His allegations fail to raise an inference of willfulness sufficient to satisfy *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 655 (2007).

**1.    Allegations Of Constructive Knowledge And Guidance From Credit Card Companies Do Not Establish An Inference Of Willfulness.**

Plaintiff alleges that VISA, MasterCard, American Express, and other companies provided guidance to "their merchant clients" on FACTA compliance and contractually required their merchants to be FACTA compliant (Doc. 1, ¶¶ 13-14, 17, 20-21), but those allegations raise no inference of willfulness. Indeed, such allegations were found insufficient in *Crupar-Weinmann v. Paris Baguette America, Inc.*, 2014 WL 2990110, **2-3 (S.D.N.Y. June 30, 2014), where the

complaint alleged, as does the Complaint here, willfulness based on the August 2006 "Rules for Visa Merchants" (Doc. 1, ¶ 14), and the compliance-with-FACTA provision in the credit card companies' contracts (*id.*, ¶¶ 20-21). Dismissing the complaint with prejudice, the court held that such "generic allegations are applicable to nearly all entities that are subject to FACTA's requirements and have been found inadequate even in a number of cases that postdate *Iqbal*'s heightened clarification of pleading requirements on a Rule 12(b)(6) motion to dismiss." *Cruper-Weinmann*, 2014 WL 2990110, *4.

The *Crupar-Weinmann* case is hardly an outlier. Indeed, this Court has held that recklessness "is not established by the mere fact that FACTA's requirements were well-publicized in the media and contained in Defendant's credit card agreements." *Rosenthal v. Longchamp Coral Gables LLC*, 603 F. Supp. 2d 1359, 1362 (S.D. Fla. 2009) (granting motion to dismiss FACTA case); *see also Komorowski v. All-American Indoor Sports, Inc.*, 2013 WL 4766800, *3 (D. Kan. Sept. 4, 2013) ("Merely alleging that a defendant should be aware of a statute and fails to comply with it, as Plaintiffs have done here, is insufficient to state a claim for willfulness.") (dismissing FACTA complaint); *Vidoni v. Acadia Corp.*, 2012 WL 1565128, *4 (D. Maine Apr. 27, 2012) ("Merely being aware of a statute, then, is insufficient to state a claim for willfulness.") (dismissing FACTA complaint); *Huggins v. SpaClinic, LLC*, 2010 WL 963924, *3 (N.D. Ill. Mar. 11, 2010) (dismissing FACTA complaint where "[p]laintiff alleges that FACTA's requirements were well-publicized and that credit card companies required compliance with the statute, but these allegations are not specific to the defendant").

> **2. Allegations That Other Businesses Complied With FACTA Do Not Raise An Inference That Pet Supermarket Willfully Violated FACTA.**

Plaintiff also bases his willfulness claim on the allegation that "[m]ost of Defendant's business peers and competitors readily brought their credit card and debit card receipt printing

process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement." (Doc. 1, ¶ 18.) That obviously boilerplate allegation raises no inference of willfulness.

The court in *Gardner v. Appleton Baseball Club, Inc.*, 2010 WL 1368663, *3 (E.D. Wis. Mar. 31, 2010), rejected almost the identical "peers and competitors" allegation: "the complaint alleges that '[m]ost of defendant's business peers and competitors readily brought their processes into compliance with FACTA by programming their credit card machines and devices to comply with the truncation requirement.'" Granting the defendant's motion to dismiss, the court authoritatively rejected that allegation as a basis for inferring willfulness:

> For example, the fact that most other businesses may have complied with FACTA raises no *specific* inference about willfulness on the part of the [defendant]. In essence, Plaintiff is suggesting that because most businesses know the law and follow it, the Defendant's failure to do so must have been willful. This is an allegation that could be leveled (and apparently is) in *every* FACTA case. Any time a company violates the law, a plaintiff can point out that most companies do *not* violate the law, and on this shaky hook a plaintiff can hang a claim of willfulness. These kinds of arguments are not particularized facts about the Defendant's intent, but inferences of general applicability drawn from the Plaintiff's observations about life. The "fact" that other businesses comply with the law is an assertion that could be leveled at *any* FACTA defendant, and thus in substance the complaint merely alleges that the Defendant violated the statute, and the violation itself is deemed sufficient evidence of willfulness. Under *Iqbal* and *Twombly*, there has to be something more.

*Id.*, *5 (emphasis original).

As the *Gardner* court held: "The essence of the complaint is: the Defendant violated the Act, some other business did not violate the act, therefore the Defendant's violation is willful." *Id.*, *6. Because such "general facts about the law itself and about other, unnamed companies' response to the law … could be alleged against *any* FACTA violator," the court granted the

- 13 -

motion to dismiss. *Id.* (emphasis original). Plaintiff's allegation as to what unnamed parties supposedly did to comply with FACTA does not raise an inference of willfulness here.[5]

In short, Plaintiff's allegations do not rise to the requisite level of willfulness or recklessness required by *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007). As a result, the Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6).[6]

## II.   ALTERNATIVELY, THIS CASE SHOULD BE STAYED PENDING THE UNITED STATES SUPREME COURT'S RULING IN *SPOKEO.*

In the event the Court does not dismiss Plaintiff's Complaint, it should grant a stay in light of the Supreme Court's imminent decision in *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (U.S. Apr. 27, 2015), which has been briefed and argued and is currently awaiting a decision. Like this case, *Spokeo* is a proposed FCRA class action that concerns Article III standing: the Supreme Court granted certiorari in *Spokeo* to address the question "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court,

---

[5] The few Plaintiff-specific allegations are watered-down allegations on "information and belief." Indeed, seven of the eleven paragraphs in the section titled "Plaintiff's Factual Allegations" are asserted "[u]pon information and belief." (Doc. 1, ¶¶ 28-34.) That is far too thin a reed on which to allow a proposed nationwide class action to go forward, and those allegations should not be taken as true. *See U.S. v. Gadsden Ind. Park, LLC*, 2015 WL 1499156, *4 (M.D. Ala. Mar. 19, 2015) ("For purposes of a 12(b)(6) motion to dismiss, allegations based 'upon information and belief' do not have to be taken as true.") (citing *Mann v. Parker*, 713 F.3d 1306, 1315 (11th Cir. 2013)).

[6] At a minimum, Plaintiff's request for injunctive relief should be dismissed. Plaintiff parrots Rule 23(b)(2) to allege that Pet Supermarket "has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole." (Doc. 1, ¶ 55.) It is well settled that the FCRA "does not provide a remedy for the type of equitable relief Plaintiff seeks here." *Palacia v. CitiMortgage, Inc.*, 2013 WL 2182012, *3 (S.D. Fla. May 20, 2013); *see also Librizzi v. Ocwen Loan Servicing, LLC*, __ F. Supp. 3d __, 2015 WL 4761647, *4 (S.D. Fla. Aug. 13, 2015) (because "'[d]istrict courts in the Eleventh Circuit have consistently held that equitable relief is not available to private citizens under the FCRA,'" the "portions of Plaintiff's Amended Complaint which seek such relief are dismissed with prejudice") (quoting *Hamilton v. DirecTV, Inc.*, 642 F. Supp. 2d 1304, 1305 (M.D. Ala. 2009)). Plaintiff's claim for injunctive relief should be dismissed.

by authorizing a private right of action based on a bare violation of a federal statute." Pet. for Writ of Cert., at i, *Spokeo, Inc. v. Robins*, No. 13-1339, 2014 WL 1802228 (U.S. May 1, 2014); *see also Rodriguez v. DFS Services, LLC*, 2016 WL 369052, *2 (M.D. Fla. Feb. 1, 2016) ("The Supreme Court in *Spokeo* will address whether Congress may constitutionally confer standing on a plaintiff who, though a 'victim' of a statutory violation, suffers no actual harm.") (granting motion to stay pending *Spokeo* decision). The Supreme Court heard oral argument on the *Spokeo* petition on November 2, 2015.

### A.     This Court Should Temporarily Stay The Case.

A district court has wide-ranging discretion "to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Stays of a court's proceedings can also serve to promote judicial economy, simplify issues in the case and therefore reduce confusion and prejudice, and additionally prevent "possibly inconsistent resolutions." *See Clinton*, 520 U.S. at 706; *see also American Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1525 (11th Cir. 1984). In particular, the Eleventh Circuit has held that a stay is appropriate "to await a federal appellate decision that is likely to have a substantial or controlling effect on the claims and issues in the stayed case." *Miccosukee Tribes of Indians of Fla. v. So. Fla Water Mgmt. Dist.*, 559 F.3d 1196, 1198 (11th Cir. 2009). That is exactly the case here.

First, Plaintiff cannot colorably claim prejudice from a temporary stay. The Court so held in entering such a stay in *Boise v. ACE USA, Inc.*, 2015 WL 4077433, *6 (S.D. Fla. July 6, 2015), where the Court held that "Plaintiff will not be unduly prejudiced or harmed by a stay of proceedings, which only stands to delay Plaintiff's recovery for a period likely less than twelve months." Conversely, the Court held that "without a stay, Defendant will be forced to endure onerous discovery and significant expenses, which may be needlessly incurred" depending on the Supreme Court's ruling. *Id.* Thus, there is no prejudice to Plaintiff for a stay that will not

exceed five months. *See Telephone Science Corp. v. Hilton Grand Vacations Co.*, 2015 WL 7555509, \*3 (M.D. Fla. Nov. 20, 2015) (staying case pending *Spokeo* decision where "there is no indication that [plaintiff] will suffer any prejudice for which a legal remedy would not suffice").

Second, *Spokeo* "will deal with threshold issues of jurisdiction and whether this case may proceed at all." *Boise*, 2015 WL 4077433, \*6.  In *Lopez v. Miami-Dade Co.*, __ F. Supp. 3d __, 2015 WL 7202905, \*1 (S.D. Fla. Nov. 6, 2015), the Court stayed exactly the type of FACTA case Plaintiff brings here, holding that "a ruling in *Spokeo* may apply to this Court's subject matter jurisdiction over statutory violations generally, including violations of FACTA, when a plaintiff fails to allege any concrete injury-in-fact." *Id.*, \*1.  Thus, "both parties could be harmed by the burden of potentially superfluous litigation."  *Boise*, 2015 WL 4077433, \*6; *see also Telephone Science Corp.*, 2015 WL 7555509, \*3 ("There is little advantage to proceeding with discovery and motions practice where the viability of much of the claim is to be shortly ascertained, especially considering that those claims will be the topic of such discovery and motions practice.").

Here, a stay will neither unduly prejudice nor present a tactical disadvantage to Plaintiff. Pet Supermarket filed this motion promptly and without delay—only 21 days after it was served with the Complaint and before any discovery has been served or undertaken.  Given that this case is in such an early stage in the proceedings, Plaintiff and his counsel have expended very little in terms of resources.  In short, a limited stay will not cause Plaintiff to "suffer any real harm here, and any harm that the plaintiff may arguably face is substantially outweighed by the importance that a decision in *Spokeo* likely will have on this litigation, and the benefits to be realized by placing the litigation on hold while that case is decided." *Salvatore v. Microbilt Corp.*, 2015 WL 5008856, \*2 (M.D. Pa. Aug. 20, 2015); *Duchene v. Westlake Services, LLC*,

2015 WL 5947669, *4 (W.D. Pa. Oct. 13, 2015) ("[H]aving to wait eight to nine months to continue litigation is not, itself, sufficiently prejudicial to outweigh the very plain benefits of staying the case, particularly when the issues pending at the Supreme Court go to this Court's power to hear the case.").

Third, a temporary stay will promote the public interest in judicial economy and efficiency by freeing up judicial resources. As the Court held in *Boise*, "[a] moderate delay here will free up judicial resources without any unfair prejudice or burden on the Plaintiff. *Boise*, 2015 WL 4077433, *6; *see also Lopez*, 2015 WL 7202905, *1 (holding, in FACTA case, that a stay pending a decision in *Spokeo* favors the "public interest in judicial economy and efficiency").

In short, as the Court held just three months ago in *Lopez* when it stayed a substantially similar proposed FACTA class action, "because (i) a stay is warranted to avoid unnecessary expenditures of time and resources, (ii) a stay will not prejudice Plaintiff since a decision is expected within the year, and (iii) there is a public interest in judicial economy and efficiency. Defendants' Motion to Stay is granted." *Lopez*, 2015 WL 7202905, *1. The Court should hold likewise here.

### B. The Length Of The Proposed Stay Is Neither Indefinite Nor Immoderate.

While not an enumerated factor in determining a motion to stay, the Eleventh Circuit has cautioned that stay orders should not be "immoderate or of an indefinite duration." *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982); *see also Boise*, 2015 WL 4077433, *6. Such a concern is not present here. The Supreme Court has already heard arguments in *Spokeo*. A decision is imminent. In one case concerning a motion to stay pending *Spokeo* in which the stay was issued last July, the Court found that the length of the stay was not indefinite nor immoderate since "a decision is imminent within a year." *Boise*, 2015 WL 4077433, *6,

*accord Lopez*, 2015 WL 7202905, *1 ("decision is expected within the year").  At this point, the stay could not exceed five months given that the Supreme Court's term ends on June 30.  The necessarily limited duration of a stay further weighs in favor of a stay here.

## **CONCLUSION**

For the reasons set forth above, Pet Supermarket's motion to dismiss should be granted.  Alternatively, the case should be stayed pending the anticipated resolution of the *Spokeo* case by the United States Supreme Court.

Dated:  February 8, 2016.

        Respectfully submitted,

        /s/ *J. Anthony Love*
        J. Anthony Love
        Florida Bar No. 67224
        KING & SPALDING LLP
        1180 Peachtree Street N.E.
        Atlanta, Georgia  30309-3521
        Tel:  (404) 572-4600
        Fax:  (404) 572-5139
        Email:  tlove@kslaw.com
        *Attorneys for Defendant Pet Supermarket, Inc.*

- 19 -

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Bret L. Lusskin, Esq.
Bret Lusskin, P.A.
20803 Biscayne Blvd., Ste. 302
Aventura, FL 33180
bluesskin@lusskinlaw.com

Scott David Owens
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive
Suite 235
Hollywood, FL 33019
Email: scott@scottdowens.com

*Attorneys for Plaintiff*

DATED:  February 8, 2016.

/s/ *J. Anthony Love*