## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No.: 0:16-cv-60090-RNS

ERIC KIRCHEIN, individually and on
behalf of all others similarly situated,

      Plaintiff,

vs.

PET SUPERMARKET, INC.,

      Defendant.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY STAY THE CASE

Like several other recent cases that were successfully brought in this District, this case stems from a merchant's repeated violation of a thirteen-year-old anti-identity-theft law, the Fair and Accurate Credit Transaction Act ("FACTA"). *See, e.g., Muransky v. Godiva Chocolatier, Inc.*, 15-cv-60716-WPD, Dkt. 26 at p.6 (S.D. Fla. Sept. 2, 2015), attached as Exhibit 1 ("Courts within this Circuit, including this Court, when faced with allegations similar to Plaintiff's here, found such allegations to be sufficient to state a claim."); *Legg v. Laboratory Corp. of America*, No. 14-cv-61543-RLR (S.D. Fla. Oct. 23, 2014) (denying motion to dismiss FACTA complaint); *Steinberg v. Stitch & Craft, Inc.*, 2009 U.S. Dist. LEXIS 72908, *6-*7 (S.D. Fla. Aug. 18, 2009) (denying motion to dismiss FACTA complaint, collecting cases).

FACTA amended the Fair Credit Reporting Act ("FCRA") to prohibit *all* merchants from printing the following information on their point-of-sale transaction receipts: (a) more than five digits of the consumer's credit or debit card number or (b) the card expiration date. 15 U.S.C. §1681c(g)(1); *Redman v. Radioshack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014) ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information.") If a merchant willfully violates this prohibition, the FCRA expressly permits the affected consumer to sue the merchant for statutory damages, costs and attorneys' fees. 15 U.S.C. §1681n(a)(1)(B).

Defendant Pet Supermarket, Inc. ("PSI") does not dispute that it violated FACTA by printing more than the last five digits of Plaintiff's and numerous other consumers' credit card numbers on their transaction receipts. Instead, PSI makes unusual argument (for a FACTA case) that Plaintiff cannot establish Article III standing, even though Plaintiff's claim is based on PSI's violation of his personal FACTA rights. PSI's argument is a non-starter because binding Supreme Court and Eleventh Circuit precedent firmly establish that a violation of Plaintiff's

1

personal statutory rights, standing alone, is an injury sufficient to support Article III standing.

PSI's alternative request to stay the case based on its speculation that the Supreme Court's anticipated decision in *Robins v. Spokeo* could change the reach of Article III fails because it is contrary to the Eleventh Circuit's repeated holding that a case may not be stayed based on an unrelated case pending before the Supreme Court. PSI also fails to meet its burden of identifying any exceptional circumstances that would justify imposing a stay, and in any event Plaintiff can establish standing even if *Spokeo* changes the law in the way PSI hopes.

Finally, PSI's request for dismissal under Federal Rule 12(b)(6) fails because Plaintiff's complaint easily satisfies the low bar of alleging sufficient matter to establish a claim that is plausible. PSI only disputes that Plaintiff has alleged sufficient facts to plausibly show that PSI's violation was "willful," the Supreme Court holds that a willful violation is one that is knowing *or* reckless, and Plaintiff alleges ample facts to show PSI's violation was both knowing *and* reckless. Multiple courts in this District rejected the same arguments PSI makes here based on the same cases PSI cites, each of which is easily distinguishable. PSI's motion should be denied.

**I.      PSI's Rule 12(b)(1) Motion to Dismiss for Lack of Article III Standing Is Contrary to Long-Standing Supreme Court and Eleventh Circuit Precedent.**

PSI admits this case is one of a "long line of similar cases brought under the Fair and Accurate Credit Transactions Act ("FACTA") amendments to the Fair Credit Reporting Act" (Dkt. 8, p.1), yet PSI does not identify a single FACTA case that has ever been dismissed for lack of Article III standing. This is because there is no legitimate basis for asserting a lack of standing given that FACTA is a federal statute, PSI violated Plaintiff's rights under that statute, and Congress created an express private right of action for statutory damages to remedy any willful violation of Plaintiff's rights under that statute.

The required elements of standing are (1) an injury, (2) "fairly traceable to the challenged action," and (3) "redressable by a favorable ruling." *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250 (11th Cir. 2015), *citing Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1147 (2013). When standing is challenged on the pleadings, all material allegations of the complaint must be accepted as true and the complaint must be construed in Plaintiff's favor. *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988). Thus, in determining whether Plaintiff meets these elements, it must be taken as true that Plaintiff bought goods at a PSI store using his VISA card, and PSI printed a transaction receipt that revealed *ten* digits of his credit card number, violating his FACTA rights and entitling him to sue PSI for statutory damages to redress the violation. (Dkt. 1 at ¶24-¶26, ¶56). As explained below, these facts easily establish the injury, traceability and redressability elements, and PSI cannot show otherwise.

**A.      Plaintiff Meets the Injury-in-Fact Element in Two Ways.**

**1.      PSI's Violation of Plaintiff's Personal Statutory Rights, By Itself, Is a Sufficient Injury for Article III Standing.**

**a.      The Sufficiency of Plaintiff's Injury Is Established by Binding Precedent and Authority that Actually Addresses FACTA.**

Contrary to PSI's unsupported claim that Plaintiff cannot establish an injury by only alleging that PSI violated his FACTA rights, and that instead Plaintiff must allege he was a victim of actual or attempted "identify theft," binding precedent establishes that PSI's violation of Plaintiff's FACTA rights, standing alone, is an Article III injury:

> Congress may create a statutory right or entitlement[,] the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute.

*Palm Beach Golf*, 781 F.3d at 1251, *citing Warth v. Seldin*, 422 U.S. 490, 514, 95 S.Ct. 2197, 2213 (1975); *see also Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1330 (11th Cir.

2013) ("the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of *which creates standing*."), *quoting Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (emphasis added).

The Supreme Court's decision in *Havens Realty* is particularly instructive. It ruled that a defendant's violation of a plaintiff's statutory right not to be lied to about available housing is a sufficient injury for Article III, even if the plaintiff had no intention of doing business with the defendant and interacted with the defendant *fully expecting* it to commit the violation:

> A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent *fully expecting* that he would receive false information, and *without any intention* of buying or renting a home, does not negate the simple fact of injury.

*Havens Realty Corp.*, 455 U.S. at 373-74 (italics added). Needless to say, a person who interacts with a firm having no intention of doing business with it, and expecting the firm to violate their rights by lying to them, suffers no harm beyond a bare statutory violation. Nevertheless, *Havens Realty* holds that nothing more was needed to establish an Article III injury. *See Id.*; *see also Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1115 (9th Cir. 2014) ("The Supreme Court's decision in *Havens Realty Corp. v. Coleman*, however, makes clear that such pecuniary or emotional harms are not necessary to a finding of injury in fact.")

The Eleventh Circuit recently confirmed *Havens Realty*'s continuing vitality by ruling that a plaintiff met the injury requirement when he sued a business for having an architectural barrier that violates the Americans with Disabilities Act, even if the plaintiff visited the business for the purpose of encountering the barrier so he could sue. *See Marod Supermarkets*, 733 F.3d at 1330 ("the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."), *quoting Havens Realty*, 455 U.S.

4

at 373. The *Marod Supermarkets* plaintiff did not identify any harm beyond the statutory violation, and yet he still met the injury requirement. Thus, *Marod Supermarkets* confirms that a violation of one's statutory rights, by itself, is a sufficient harm for Article III.

Finally, the only appellate case to address Article III standing in the FACTA context holds that the alleged violation of the plaintiff's statutory rights under FACTA, standing alone, is sufficient harm to meet the injury requirement. *See Hammer v. Sam's East, Inc.*, 754 F.3d 492, 498 (8th Cir. 2014) ("the actual-injury requirement may be satisfied *solely* by the invasion of a legal right that Congress *created*.") (italics in original). Indeed, *Hammer* notes that "[t]his is not a novel principle within the law of standing." *Id.*

Under *Havens Realty*, *Marod Supermarkets* and *Hammer*, Plaintiff easily meets the injury requirement because he alleges PSI violated his personal statutory rights under FACTA. (ECF No. 1, ¶1). Accordingly, Plaintiff's allegations establish an Article III injury. *See Boise v. ACE USA, Inc.*, No. 15-Civ-21264, 2015 U.S. Dist. LEXIS 87200 at *8-*9 (S.D. Fla. July 6, 2015) ("Plaintiff alleges conduct amounting to a violation of the [statute] and therefore has Article III standing to pursue his claim."); *see also Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 682 (S.D. Fla. 2013) ("a plaintiff suffers an injury under Article III whenever there is a violation of a legally protected interest."); *Jordan v. ER Solutions, Inc.*, 900 F.Supp.2d 1323, 1325-6 (S.D. Fla. 2012) ("one suffers an 'injury in fact' for Article III purposes when there is a violation of a legally protected interest.") (citations omitted).

> **b.   Defendant's Position Is Based Inapposite Cases, Mainly Inapplicable Third-Party "Data Breach" Cases.**

PSI ignores the foregoing authorities. Instead, PSI cites the Supreme Court's decision in *Clapper v. Amnesty Int'l USA*, but that case is easily distinguishable. The plaintiffs in that case did not sue to remedy any violation of their rights. Instead, they sought to have the Foreign

Intelligence Surveillance Act declared unconstitutional because they were as concerned the government *might* use that statute to view the plaintiffs' communications with foreign non-citizens. 133 S.Ct. at 1142, 1147. By contrast, here Plaintiff seeks to enforce his own rights, and pleads an actual violation.

PSI also cites decisions from the First and Fourth Circuits to suggest that its violation of Plaintiff's personal rights under FACTA is not enough of an injury to meet Article's "injury" requirement. *See Katz v. Pershing, LLC*, 672 F.3d 64, 75 (1st Cir. 2012); *David v. Alphin*, 704 F.3d 327 (4th Cir. 2013). However, neither case says that or addresses *Havens Realty*, *Marod Supermarkets* or *Hammer*, and both cases are easily distinguishable.

In *Katz*, the plaintiff just generally alleged the defendant's actions made it possible for her personal information to be exposed, without identifying any law that specifically prohibited that conduct and gave her a right of action to remedy it. *See Katz*, 672 F.3d at 70 ("the plaintiff's concern is that her nonpublic personal information has been left vulnerable to prying eyes because it is inadequately protected by the defendant's service.")[1] The *David* plaintiffs also did not assert a violation of any personal statutory rights – instead they tried to assert a claim on behalf of their pension plan to challenge the investment choices its operators had made, even though the plan was *over*funded. *See David*, 704 F.3d at 333. Thus, putting aside that *Katz* and *David* do not address and cannot trump the binding holdings of *Havens Realty* or *Marod Supermarkets*, or refute *Hammer*, neither case presents a basis for concluding that PSI's violation of Plaintiff's personal FACTA rights is not enough of an injury to satisfy Article III.

---

[1] The *Katz* plaintiff alleged both common law claims and claims based on a statute but, unlike here, the statute did not expressly prohibit the challenged conduct. *See Id.* at 77-78. Regardless, the court found no standing to assert that claim in part based on the "causation" requirement for standing, not the "injury in fact" requirement. *See Katz*, 672 F.3d at 76 ("whether or not the plaintiff can cross that low threshold — a matter on which we take no view — her claim stumbles over the altogether different requirement of causation.")

Finally, PSI cites a litany of "data breach" cases, *i.e.*, cases in which a merchant is sued by its customers after the merchant's customer information is hacked by a third party. *See, e.g.*, *In re: Zappos.com, Inc. Customer Data Security Breach Litig.*, 108 F.Supp.3d 949, 951 (D. Nev. 2015). The harm alleged in such cases is potential identity theft or a heighted risk of it caused by the hackers, *i.e.*, no actual rights of the plaintiff are violated by the merchant itself. *See, e.g.*, *Zappos*, 108 F.Supp.3d at 955; and *Storm v. Playtime, Inc.*, 90 F.Supp.2d 359 (M.D. Pa. 2015).

This shows why data breach cases are readily distinguishable. Unlike here, the data breach plaintiffs do not allege the merchant violated their personal statutory rights. Instead, the data breach plaintiffs try to hold the merchant responsible for the hackers' conduct by alleging a failure to meet some general common law or statutory standard that does not confer any direct rights on the plaintiffs.[2] The *Galaria* case PSI cites recognizes this distinction, noting "Congress may confer standing to redress injuries only on parties who *actually* have been deprived of the newly established statutory rights." *Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646, 654 (S.D. Ohio 2014) (italics added). In any event, it must also be noted that courts in other data breach cases have concluded there *is* standing to sue. *Lewert v. P.F. Chang's China Bistro, Inc.*, No. 14-3700, 2016 WL 1459226, at *6 (7th Cir. Apr. 14, 2016); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 697 (7th Cir. 2015); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1214 (N.D. Cal. 2014); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1159 (D. Minn. 2014). Thus, while the cases PSI cites might suggest that a violation of

---

[2] *See Green v. eBay, Inc.*, 2015 U.S. Dist. LEXIS 58047 (E.D. La. May 4, 2015); *In re SuperValu, Inc.*, 2016 U.S. Dist. LEXIS 2592 (D. Minn. Jan. 7, 2016); *Whalen v. Michael Stores, Inc.*, 2015 U.S. Dist. LEXIS 172152 at *1 (E.D. N.Y. Dec. 28, 2015); *Peters v. St. Joseph Servs. Corp.*, 74 F.Supp.3d 847 (S.D. Tex. 2015); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F.Supp.3d 14 (D. D.C. 2014); *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871 (N.D. Ill. 2014); *Willingham v. Global Payments, Inc.*, 2013 U.S. Dist. LEXIS 27764 (N.D. Ga. Feb. 5, 2013); *Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646 (S.D. Ohio 2014).

general standard will not give rise to an Article III injury in some instances, none hold that a violation of a plaintiff's personal statutory rights is insufficient, and regardless none address the binding holdings of *Havens Realty* or *Marod Supermarkets*, or address *Hammer*.[3] Accordingly, the data breach cases are irrelevant. As shown, PSI's violation of Plaintiff's personal rights under FACTA is an Article III injury.

### 2. Plaintiff Suffered Additional Harm Beyond PSI's Violation of His Personal Statutory Rights.

Even if PSI could prove its violation of Plaintiff's personal FACTA rights was not enough of an injury to satisfy Article III standing, Plaintiff alleges additional harm beyond that violation. Specifically, he alleges that as a result of PSI's violation, he had to take the trouble to secure the receipt, to ensure his credit card information was not further exposed. (*See* Declaration of Plaintiff, attached as Exhibit 2, at ¶ 5).[4]

Although small, this injury is also sufficient to confer standing because, as the Eleventh Circuit recognized in *Palm Beach Golf*, the mere inconvenience of a phone line being occupied for a few moments by a junk fax sender is an injury sufficient to confer standing. *See* 781 F.3d at 1251. Simply put, "[t]he Supreme Court has rejected the argument that an injury must be

---

[3] The *Green*, *In re Sci Applications*, *Strautins*, *Willingham* and *Galaria* cases mention statutes, but do not identify provisions creating personal rights that the defendant violated. *Whalen* identifies a general business practice law. *Whalen* at *11. *Peters* identifies the specific FCRA provisions the plaintiff sued to enforce, but suggests they are disconnected from any injury the defendant may have caused. *Id.* at 857 ("the allegation is conclusory and fails to account for the sufficient break in causation caused by opportunistic third parties.") *Supervalu* describes a general post-breach notice statute. *Supervalu* at *21-*22. *Willingham* addressed the FCRA and another statute, but did not discuss them in its standing analysis. *Willingham* at *13-*25. *Galaria* found "the Complaint does not allege a specific requirement in the FCRA that Defendant failed to perform or a specific prohibition that Defendant ignored." *Galaria* at 653.

[4] Although Plaintiff presents these allegations with a declaration instead of the complaint, the Court may consider matter beyond the complaint on a motion to dismiss under Federal Rule 12(b)(1). *Seminole Tribe v. Coryi, Inc.*, 1996 U.S. Dist. LEXIS 21368 at *3 (S.D. Fla. 1996).

'significant'; a small injury, 'an identifiable trifle,' is sufficient to confer standing." *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009) *citing United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689, n.14 (1973).

Indeed, here Plaintiff suffered a greater imposition than the one found to be sufficient in *Palm Beach Golf* because, unlike here, the junk fax in *Palm Beach* did not require the plaintiff to do anything. In short, even if establishing standing required Plaintiff to prove harm beyond PSI's violation of his personal statutory rights, he can. For this additional reason, PSI has not and cannot refute Plaintiff's showing that he meets the injury requirement for Article III standing.

**B.      Plaintiff Meets the Traceability and Redressability Requirements.**

PSI also claims Plaintiff cannot meet the other two standing elements, *i.e.*, show his injury is "fairly traceable" to PSI's actions, and show his claim is "redressable by a favorable ruling" in this lawsuit. *Palm Beach Golf*, 781 F.3d at 1250. PSI's claim is baseless.

Again, the principal injury is PSI's violation of Plaintiff's personal FACTA's rights, and that violation is fairly traceable to PSI's actions because PSI is the one that printed the receipt revealing more than the last five digits of Plaintiff's card number. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) ("A showing that an injury is 'fairly traceable' requires less than a showing of 'proximate cause.' Even a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement.") (citation omitted).

Likewise, Plaintiff's injury can be redressed by a favorable ruling because Congress expressly gave Plaintiff a right to sue PSI for statutory damages. *Hammer*, 754 F.3d at 500 ("By permitting a consumer to recover statutory damages under the FCRA liability provision, … Appellants' action against Sam's Club for violating FACTA's receipt requirement can be redressed."); *see also Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir.

2009) ("statutory damages may be used in cases where no actual damages were incurred.") Thus, Plaintiff easily meets the traceability and redressability elements.

PSI's argument to the contrary is once again based on inapposite data breach cases. The plaintiff's harm in those cases is generally traceable only to the actions of the third-party hackers, not the defendant merchant whose system was hacked. *See*, *e.g.*, *Peters*, 74 F.Supp.3d at 857 ("The injuries, to the extent that they meet the first prong, are 'the result of the independent action of a third party' and therefore not cognizable under Article III.") Likewise, the plaintiffs' injuries in those cases are arguably difficult to redress because they claim *potential* identity theft, whereas PSI's violation of Plaintiff's personal rights here is easy to redress because Congress expressly provided a private right of action for statutory damages. *Hammer*, 754 F.3d at 500. In short, Plaintiff meets all of the elements required for Article III standing, and PSI's motion to dismiss under Rule 12(b)(1) should be denied.

## II.   PSI's Request to Stay the Case Based on the Mere Possibility that the Law Might Change Is Contrary to Eleventh Circuit Authority.

PSI alternatively asks the Court to stay this case pending a decision in *Robins v. Spokeo*, a case that does not address FACTA, and whose outcome may have absolutely no impact whatsoever on this case. Requests for a stay pending *Spokeo* have become the favored delay tactic of defendants around the country, but in this District the vast majority of courts reject such requests because they are contrary to Eleventh Circuit authority that holds that the pendency of an unrelated case in the Supreme Court cannot justify granting a stay.[5] The majority of courts in

---

[5] *See* Exhibit 3 (*Riccardi v. Ed Ideas, Inc.*, No. 15-cv-80488-Bloom/Valle (S.D. Fla., Dec. 3, 2015) ("Following Eleventh Circuit law, the Court assigns no precedential significance to the fact that the Supreme Court has granted certiorari in *Spokeo*. Therefore, the Court must deny Defendant's motion to Stay.")), and Exhibit 4 (*Berman v. Nationstar Mortgage, LLC*, 15-80924-Civ-Brannon ("The majority of these cases have declined to issue a stay. See, e.g., Torongo v. Robert G. Roy, Case No. 15-81490-Civ-Middlebrooks/Brannon, DE (S.D. Fla. Dec. 18, 2015)

other jurisdictions are in accord.[6] Also, PSI presents no compelling reason for a stay, which unfairly delays and potentially threatens Plaintiff's ability to meet his burden of proof by subjecting him to the potential loss of evidence. For each of these reasons, PSI's alternative motion to stay should be denied.

### A.      Eleventh Circuit Authority Prohibits Staying this Case Based on *Spokeo*.

Courts generally have an obligation to proceed with adjudicating the cases pending

(quote omitted); <u>Keim v. ADF Midatlantic, LLC</u>, Case No. 12-80577-Civ-Marra/Matthewman, DE 123 (S.D. Fla. Dec. 17, 2015) (quote omitted); <u>Callie v. Discover Financial Servs.</u>, Case. No. 14-24667-Civ-Williams/Simonton, DE 27 (S.D. Fla. Nov. 30, 2015) (denying motion to stay pending decisions in Spokeo ….); <u>Coniglio v. Iqual Corp.</u>, Case No. 15-2406-Civ-Hernandez-Covington (M.D. Fla. Dec. 3, 2015) (denying motion to stay pending a decision in Spokeo ….)"; and outside this district *see Speer v. Whole Food Market Group, Inc.*, No. 14-cv-3035, 2015 U.S. Dist. LEXIS 57783 at *2 (M.D. Fla. April 29, 2015) ("consistent with established Eleventh Circuit precedent … a grant of certiorari by the Supreme Court does not change the law and does not constitute new law, … a stay of these proceedings to await a decision from the Supreme Court in *Spokeo* is not warranted.")

[6] *Leung v XPO Logistics*, 15-cv-3877 (N.D. Ill. Aug. 12, 2015); *Cholly v. The Uptain Group, et al.*, 15-cv-5030 (N.D. Ill. Sept. 17, 2015), *McCaskill v Navient Solutions, Inc.*, No. 15-cv-01559-VMC-TBM, Dkt. 48 (M.D. Fla. Dec. 2, 2015); *Speer*, 2015 U.S. Dist. LEXIS 57783 at *1-*2; *Woods v. Caremark PHC, LLC*, 2015 U.S. Dist. LEXIS 148051 at *7-*8 (W.D. Mo. Nov. 2, 2015); *Doe v. Selection.Com*, 2015 U.S. Dist. LEXIS 137903 at *10-*13 (N.D. Cal. Oct. 8, 2015); *Dreher v. Experian Info. Solutions, Inc.*, Case No. 11-CV-624 (E.D. Va. Apr. 30, 2015); *Manuel v. Wells Fargo Bank, NA*, Case No. 14-cv-238 (E.D. Va. Aug. 18, 2015); *Johnson v. Navient Solutions*, 2015 U.S. Dist. LEXIS 167213 (S.D. Ind. Dec. 15, 2015); *Coniglio v. Iqual Corp.*, No. 15-2406-Civ (M.D. Fla. Dec. 3, 2015); *Wenning v. On-Site Manage, Inc.*, No. 14-cv-9693 (S.D.N.Y. Dec. 17, 2015); *Rooter v. Birch Comms., Inc.*, No. 15-cv-3562-AT (N.D. Ga. Jan. 7, 2016); *Heidarpour v. Cent. Payment Co., LLC, No. 4:15-CV-139 (CDL), 2015 WL 9897728, at *1 (M.D. Ga. Nov. 25, 2015)*; *Lathrop v. Uber Technologies, Inc.*, 14-cv-5678 (N.D. Cal. Jan. 8, 2016); *Kafatos v. Uber Technologies, Inc.*, 15-cv-3721 (N.D. Cal. Jan. 8, 2016); *Dennis v. TransUnion, LLC*, 14-cv-2865 (E.D. Pa. Jan. 12, 2016); *Rivera v. Exeter Fin. Corp.*, 2016 U.S. Dist. LEXIS 11505 (D. Colo. Feb. 1, 2016); *Zani v Rite Aid Hdqtrs. Corp.*, 14-cv-9701 (S.D.N.Y. Feb. 1, 2016); *Morehouse v. Network Cap. Funding Corp.*, 2016 U.S. Dist. LEXIS 13850 (M.D. Fla. Feb. 4, 2016); *Antongiovanni v Equifax Info. Servs., Inc.*, 15-CV-10921 (N.D. Ill. March 11, 2016); *Arkin v. Innocutis Holdings,* LLC, 2016 U.S. Dist. LEXIS 47530 (April 1, 2016); *Abante Rooter & Plumbing, Inc. v. Birch Comms., Inc.*, 2016 WL 269315 at *2-3 (N.D. Ga. 2016); *Fitzhenry v. Career Educ. Corp.*, 2016 WL 792312 at *4 (N.D. Ill. March 1, 2016); *Vergara v. Uber*, 15-cv-06942 (N.D. Ill. Aug. 7, 2015); *Haysbert v. Navient Sols.,*, 2016 WL 890297 at *3-*5 (C.D. Cal. March 8, 2016); *Mogg v. Jacobs*, 15-CV-1142, 2016 WL 1029396 at *5 (S.D. Ill. March 16, 2016); *Weiner v. Xcel Energy, Inc.*, 16-cv-215 (D. Minn. March 24, 2016); *Jamison v. Esurance Ins. Services, Inc.,* 2016 WL 320646 (N.D. Tex. Jan. 27, 2016).

before them. *See Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 813 (1976). Consistent with this rule, the Eleventh Circuit holds a case may not be stayed pending the Supreme Court's decision in an unrelated case if binding precedent supplies a rule of decision for the district courts to follow in the meantime:

> grants of certiorari do not themselves change the law, [and] they **must not be used by courts of this circuit as a basis for granting a stay of execution that would otherwise be denied.** Our decision in Schwab is the latest in a long line of cases refusing to assign precedential significance to grants of certiorari. **Until the Supreme Court issues a decision that actually changes the law, we are duty-bound to apply this Court's precedent** and to use it and any existing decisions of the Supreme Court to measure the likelihood of a plaintiff's success on the merits.

*Gissendaner v. Ga. Dep't of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015), *quoting Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1299 (11th Cir. 2007) (emphasis added, internal citations omitted); *see also Arkin v. Innocutis Holdings, LLC*, 2016 U.S. Dist. LEXIS 47530 at *3-*4 (M.D. Fla. April 1, 2016) ("The Eleventh Circuit disfavors the granting of a stay based on the Supreme Court's grant of certiorari."), *citing Gissendaner*, 779 F.2d at 1284.

It must be noted that *Gissendaner* and *Schwab* were death row cases in which the defendant hoped a change of law would spare their lives. Yet the Eleventh Circuit *still* found a stay to be inappropriate because current law already supplied the rule of decision. Likewise, PSI's proposed stay is contrary to *Gissendaner* and *Schwab* because, as shown, Plaintiff has standing under current Supreme Court and Eleventh Circuit authority.

PSI claims a stay is proper based on *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191 (11th Cir. 2009), but that case did not decide when a stay is proper. The issue in *Miccosukee Tribe* was whether the court had jurisdiction to hear the appeal, and the Court found it did not. *Id.* at 1193 ("The first, and as it turns out, the last issue we need to address is whether we have jurisdiction.") Also, the stay in that case was entered pending the

appeal of a *related* case between some of the same parties whose outcome would affect the stayed case, whereas here *Spokeo* is an unrelated case that may have no impact on this case. *See Id.* at 1192-93. Significantly, *Miccosukee Tribe* does not discuss *Gissendaner* or *Schwab*, let alone distinguish them.

PSI also cites *Lopez v. Miami-Dade Cnty.*, 2015 U.S. 155987 (S.D. Fla. Nov. 6, 2015) and *Boise v. Ace USA, Inc.*, 2015 U.S. Dist. LEXIS 87200 at *4-*5 (S.D. Fla. July 6, 2015), but neither case addresses *Gissendaner* or *Schwab*. Indeed, the link among the few cases from this District that granted stays pending *Spokeo* is they do not address *Gissendaner* or *Schwab*, or they cite them but do not confront their holdings, or they speculate that *Spokeo will* affect the case when, in fact, *Spokeo*'s outcome cannot be predicted. *See Id.*; *see also Zia v. Citimortgage, Inc.*, 2016 U.S. Dist. LEXIS 37039 at *5-*7 (S.D. Fla. March 22, 2016).

As shown, *Gissendaner* and *Schwab* prohibit a stay based on mere pendency of *Spokeo*. For this reason alone, PSI's stay request should be denied.

> **B.     There Is No Compelling Reason for a Stay Because the Parties Will Litigate Plaintiff's Claims Regardless of *Spokeo*'s Outcome.**

In addition to being contrary to *Gissendaner* and *Schwab*, PSI fails to prove any exceptional need for a stay. A case should not be stayed "in the absence of exceptional circumstances." *American Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1525 (11th Cir. 1984); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside….") The burden of demonstrating this need falls on PSI. *See Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("The proponent of a stay bears the burden of establishing its need.")

But PSI does not and cannot prove any exceptional "need." It just speculates that *if* the Supreme Court decides *Spokeo* instead of dismissing the *certiorari* petition as "improvidently

granted" like the Court did the last time the issue presented in *Spokeo* was before the Court,[7] and *if* the Court renders a decision that narrows the injury-in-fact element as PSI hopes, the Court's decision *might* give PSI a basis to argue that this case should be dismissed for lack of jurisdiction. This possibility is not exceptional as cases pending before the high court routinely have the potential to affect other cases. Regardless, *Spokeo*'s pendency is insufficiently "exceptional" as a matter of law because, as shown above, *Gissendaner* and *Schwab* hold that a stay may not be imposed based on the mere possibility that established precedent might change.

PSI also speculates a stay could save work depending on *Spokeo*'s outcome, but that is not an "exceptional" circumstance because again, the same thing can be said in every instance in which there's some unrelated case pending in a higher court whose outcome might have an effect on a case pending in the District Court. If every case in the District were stayed each time an unrelated case that could affect the governing law was pending before the Eleventh Circuit or Supreme Court, the judicial "process" would become an endless series of interruptions.

In any event, *Spokeo*'s outcome will not save any significant work for two reasons. First, as shown, Plaintiff suffered additional injury beyond PSI's violation of his FACTA rights, and thus he can prove standing even if *Spokeo* rules that "mere" violation of his rights is not sufficient to prove standing. Second, *Spokeo* cannot affect the underlying substantive law of this case – only perhaps its venue, *i.e.*, whether the case continues in federal court. If dismissed for lack of Article III standing here, Plaintiff can still proceed in state court because state and federal courts have concurrent jurisdiction over FCRA/FACTA claims. *Lockhard v. Equifax, Inc.*, 163 F.3d 1259, 1264 (11th Cir. 1998). Indeed, in recognition of this fact, the parties in three other

---

[7] *Hammer*, 754 F.3d at 506-507 ("in 2012, the Supreme Court granted certiorari and heard argument on this precise question in *First American Financial Corp. v. Edwards*, 567 U.S. __, __ 132 S.Ct. 2536, 2537, 183 L. Ed. 2d 611 (2012) (per curiam), yet ultimately dismissed the writ as improvidently granted.")

recently-settled FACTA class actions agreed as part of the settlement to simply re-file the settlements in state court if *Spokeo* eliminates federal jurisdiction while the settlements are pending. (Exhibit 5 (Declaration of Scott D. Owens) at ¶ 5). Accordingly, this case will proceed regardless of *Spokeo*'s outcome. A stay does not eliminate this work – it can only delay it.

### C.    A Stay Adversely Affects Plaintiff and the Proposed Class.

In addition to the absence of any compelling need for a stay and the other reasons against it, a stay adversely affects Plaintiff and the proposed class by delaying the resolution of their claims. *See United States v. Swissco Properties within S. Dist.*, 821 F. Supp. 1472, 1475 (S.D. Fla. 1993) (denying a stay in part because "justice delayed is justice denied.") In addition, a stay risks the degradation of critical evidence, which affects Plaintiff's ability to prove class certification because Plaintiff must subpoena numerous third parties to ascertain the class.[8] This risk of loss is exclusively borne by Plaintiff because he has the burden of proof. *See*, *e.g.*, *Young v. Peraza*, No. 15-60968-CIV--COHN/SELTZER, 2015 U.S. Dist. LEXIS 101844 at *5 (S.D. Fla. Aug. 4, 2015) ("Were the Court to grant the Motion [to stay], Plaintiff would stand to suffer prejudice as the memories of eyewitnesses faded with the passage of time.")

In sum, the binding decisions in *Gissendaner* and *Schwab*, PSI's inability to prove any compelling need for a stay and the delay and the risk of harm solely borne by Plaintiff each demonstrate that PSI's alternative motion to stay should be denied.

---

[8] The class members in this case are persons who make purchases at PSI's retail stores using debit or credit cards (ECF No. 1, ¶40), identifying these people and obtaining their contact information will require Plaintiff to subpoena the banks that issued the cards because PSI did not collect that data from purchasers (Owens Declaration at ¶ 3), and the issuing banks have no obligation to preserve that evidence while the case is stayed.

15

### III.   PSI's Request for Dismissal under Fed. R. Civ. P. 12(b)(6) Should Be Denied Because, as Numerous Other Courts Ruled Based on Similar Facts, Plaintiff States a Claim for Relief under FACTA.

PSI also seeks dismissal under Federal Rule 12(b)(6), claiming Plaintiff cannot plausibly allege that its undisputed violation of FACTA was willful. This argument is routinely rejected based on essentially the same facts at issue here, including by Courts in this District. It should be rejected again because PSI does not even acknowledge the two tests for willfulness, let alone attempt to meets its burden of proving that it is impossible for Plaintiff to meet either one of them. Instead, PSI just cherry picks facts from the complaint, and cites in apposite cases. As explained below, Plaintiff's willfulness allegation is plausible.

### A.   The Facts.

A key aspect of PSI's motion is that it omits most of the facts in the complaint, including facts that go to willfulness. This is improper because, in deciding a request for dismissal under Rule 12(b)(6), all of the facts alleged must be taken as true and construed in Plaintiff's favor. *See Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).[9] This includes the following:

FACTA was passed by Congress and signed by President Bush in 2003. (Dkt. 1 ("Complaint"), ¶9). Congress gave merchants almost three years - *i.e.*, until December 4, 2006, to comply with the law. (*Id.*, ¶12).

FACTA's terms were widely publicized. (Id., ¶13). For example, in 2003, Visa USA's CEO said "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. . . . . Our new receipt truncation policy will soon limit cardholder information

---

[9] PSI claims that facts pled "on information and belief" need not be accepted as true, but that is incorrect. *See Associated Indus. Ins. Co. v. Advanced Mgmt. Servs.*, 2013 U.S. Dist. LEXIS 37830 at *17 (S.D. Fla. March 19, 2013) ("The *Twombly* plausibility standard, however, does not prevent a plaintiff from 'pleading facts alleged 'upon information and belief' …")

on receipts to the last four digits of their accounts . . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals...." (*Id.*) Within 24 hours, MasterCard and American Express announced they were imposing similar requirements. (*Id.*)

These organizations went on to contractually require merchant compliance with FACTA. (*Id.*, ¶14). For example, the "Rules for Visa Merchants," which is distributed to and binding on all merchants that take VISA cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and that "the expiration date should not appear at all." (*Id.*)

When a handful of large retailers got sued for violating FACTA shortly after its effective date, Congress passed the "Clarification Act" to absolve past violations, up to June 3, 2008. (*Id.*, ¶15-¶16). However, Congress did not alter FACTA's requirements going forward, and Congress did not absolve any merchant for violating the five-digits requirement at issue here. (*Id.*, ¶16).

Meanwhile, card organizations continued to alert their merchants, including PSI, of FACTA's requirements. (*Id.*; ¶17). A Visa Best Practice Alert in 2010 warned that:

> the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN …. on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.)

(*Id.*, ¶18). In fact, VISA informed PSI it was not allowed to print more than the last five digits on point-of-sale receipts, and PSI contractually promised VISA it would not do so. (*Id.*, ¶19). PSI accepts credit cards from all major issuers, and each requires compliance with the five-digits requirement from all of their member merchants, including PSI. (*Id.*) Likewise, the credit card processor that PSI has worked with since 2007, First Data Corp., would have directly informed PSI about its FACTA obligations. (*Id.*, ¶29-¶30).

17

PSI operates more than 150 retail stores. (*Id.*, ¶27). PSI had a written policy requiring truncation of card numbers and, before it installed a new point-of-sale system in 2015, PSI had been complying with FACTA. (*Id.*, ¶32). However, PSI's new point-of-sale system in 2015 was programmed to print transaction receipts that did not comply with FACTA. (*See Id.*, ¶31).

PSI's violations of FACTA here are obvious, as the non-truncated credit card account number is displayed on the face of the receipt, and thus plainly visible to the PSI employees who print them. (*See* Plaintiff's Receipt, attached as Exhibit 2). Also, PSI was able to determine which fields of information would appear on its point-of-sale receipts (Complaint, Dkt. 1, ¶33).

On January 6, 2016, Plaintiff visited a PSI retail store in Sunrise Florida, he bought goods with his VISA card, and PSI issued him an electronically-printed receipt that revealed both the first six and last four digits of his credit card number on the face of the receipt. (*Id.*, ¶24-¶25). Plaintiff is a regular PSI customer, and this is but one of several instances in which PSI issued him a receipt that revealed more than the last five digits of his account number. (*Id.*, ¶26).

### B.    Under Federal Notice Pleading Standards, PSI Must Prove that Plaintiff's Claim Is Speculative.

As the movant under Federal Rule 12(b)(6), PSI must prove the complaint does not adequately plead Plaintiff's FACTA claim. *Sprint Solutions, Inc. v. Fils-Amie*, No. 14-60224, 44 F.Supp. 3d 1224, 1228 (S.D. Fla. 2014). To adequately plead a claim, the complaint "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This means a complaint need only contain enough facts to make the claim "plausible." *Speaker*, 623 F.3d at 1380, *citing Twombly*, 550 U.S. at 570.

A claim is plausible if, taking Plaintiff's allegations as true and construing them in Plaintiff's favor, the complaint allows the Court to reasonably infer that PSI is liable for the

conduct alleged. *Speaker*, 623 F.3d at 1380, *citing Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Plausibility does not require specific or detailed allegations. *Erickson*, 551 U.S. at 93 ("Specific facts are not necessary."); *Twombly*, 550 U.S. at 555 ("a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations.") Also, it is not necessary to plead facts sufficient to show that it is "likely" that the plaintiff will win. *Speaker*, 623 F.3d at 1380 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."), *quoting* 550 U.S. at 556.

Instead, Plaintiff only needs to allege enough facts, taken as true and construed in his favor, to show that his right to recover is not speculative. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level [cite omitted] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") Thus, PSI must prove Plaintiff's allegations are so lacking that his claim is nothing more than speculative. As explained below, PSI has not and cannot meet that burden.

### C.    Plaintiff's Allegations Plausibly Allege a Willful Violation in Two Ways.

FACTA imposes is a simple, unambiguous command: "no person that accepts credit cards or debit cards for the transaction of business shall print *more than the last 5 digits of the card number* or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. §1681c(g)(1) (emphasis added). Affected consumers are entitled to statutory damages for any violation of this provision that is willful. 15 U.S.C. §1681n(a)(1)(A).

A violation is "willful" if the violation is either knowing *or* reckless. *Safeco Ins. Co of Am. v. Burr*, 551 U.S. 47, 57 (2007). These are two distinct tests. *See Id.*; *see also Speer v. Whole Food Mkt. Group, Inc.*, No. 14-cv-3035, 2015 U.S. Dist. LEXIS 40462 at *9 (M.D. Fla. Mar. 30,

2015) (willfulness covers "reckless violations as well as knowing violations of the FCRA."),
*citing Safeco*, 551 U.S. at 57-58.

PSI ignores this and incorrectly tries to discuss the two concepts together, as if they were part of a single test. As explained below, each test requires a distinct analysis, and Plaintiff's allegations plausibly show that PSI's violation of the five digits requirement meets each of them. Thus, in two ways, PSI's request for dismissal under Fed. R. Civ. P. 12(b)(6) should be denied.

### 1.    The Complaint Plausibly Alleges a Knowing Violation.

#### a.    Courts in FACTA Cases Routinely Deny Motions to Dismiss Under Essentially the Same Facts at Issue Here

The complaint adequately alleges that PSI knowingly violated FACTA's five-digits requirement because it pleads facts to show PSI was aware of the requirement, but violated it anyway. The credit card companies and PSI's credit card processor informed PSI that it was not allowed to print more than the last five digits on point-of-sale receipts, and PSI contractually promised it would not do so. (*Id.*, ¶19, ¶30). American Express instructs its merchants that "[p]ursuant to Applicable Law, …. truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members." (*Id.*, ¶20). Likewise, MasterCard instructs its merchants that "a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN)" (Dkt. 1, ¶21). Also, the merchant rules for VISA (Plaintiff's card issuer) state, "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." It is not only plausible that PSI knows these contractual obligations – it is presumed to know them. *See Hall v. Burger King Corp.*, 912 F. Supp. 1509, 1521 (S.D. Fla. 1995) ("a person who signs a contract is presumed to know its contents.") (*quoting Swift v. N. Am. Co. for Life &*

*Health Ins.*, 677 F.Supp. 1145, 1150 (S.D. Fla. 1987) (collecting cases)).

It is also plausible that PSI, a large, sophisticated business with more than 150 retail locations, was made aware of FACTA's five-digits requirement as a result of the law being widely publicized when it was enacted in 2003. (Dkt. 1, ¶9); and *see Dover v. Shoe Show, Inc.*, No. 12-694, 2013 U.S. Dist. LEXIS 59418 at *7 (W.D. Pa. Mar. 19, 2013) ("the Complaint does allege sufficient publicity and guidance from credit card processors to place a sophisticated retailer with over 1,000 stores on notice of its obligations under FACTA."). FACTA also made headlines in 2008 when Congress granted amnesty for certain FACTA violations (*Id.*, ¶15-¶16), and numerous judicial opinions have been issued over the years ruling it is illegal to print more than the last five digits of the card account number. *See, e.g.*, *Tchoboian v. FedEx Office & Print Servs.*, No. CV10-1008, 2011 U.S. Dist. LEXIS 158776 at *11 (C.D. Cal. Nov. 14, 2011) ("FACTA clearly prohibits the printing of 'more than the last 5 digits of the card number....'")

Finally, PSI demonstrated its awareness of FACTA's requirements. PSI had a written policy regarding FACTA compliance, and previously complied with FACTA before it changed its system in 2015. (*Id.*, ¶32).

Despite the foregoing, PSI allowed its payment equipment to systematically print more than the last five digits of its customers' credit card account numbers on receipts at its stores. (*Id.*, ¶31). PSI chose which information would be printed on the receipt. (*Id.*). Moreover, PSI was made aware of the violation each time PSI committed it because the card account numbers are displayed on the face of the receipts it printed. (*See Id.*, ¶ 27).

The foregoing allegations are sufficient to show that PSI's violation of the five digits requirement was knowing, and thus willful:

> Plaintiff's allegations of willfulness are based on disclosures provided by major credit card companies to merchants following the enactment of FACTA. *See*

21

Compl. PP 15-17. Plaintiff alleges that Defendant had actual and constructive
knowledge of FACTA's requirements several years before it was required to
come into compliance, but nonetheless ignored these requirements after FACTA
became effective. *Id.* at PP 8, 20. The Complaint states that major credit card
companies 'notified the merchants, *including the Defendant,* that the FACTA
prohibited the printing of more than the last five digits of the credit/debt card
number and/or the expiration dates associated with the credit/debit card account
and that they were required to comply with the FACTA.' *Id.* at P 15 (emphasis
added). Finally, the Complaint alleges Defendant violated FACTA because it 'did
not wish to incur the additional expense of reprogramming or updating its point-
of-sale equipment.' *Id.* at P 21. These allegations are sufficient….

*Steinberg v. Stitch & Craft, Inc.,* 2009 U.S. Dist. LEXIS 72908, *6-*7 (S.D. Fla. Aug. 18, 2009)

(collecting cases); *see also Muransky*, 15-cv-60716-WPD, Dkt. 26 at p.6 (S.D. Fla. Sept. 2,

2015), attached as Exhibit 1 ("Courts within this Circuit, including this Court, when faced with

allegations similar to Plaintiff's here, found such allegations to be sufficient to state a claim."),

*Lavery v. Radioshack Corp.*, No. 13-cv-5818, 2014 U.S. Dist. LEXIS 85190 at *5-*6 (N.D. Ill.

June 23, 2014) ("Such allegations have repeatedly been held sufficient to survive the pleading

stage.") (collecting cases); *Buechler v. Keyco, Inc.*, No. 09-2948, 2010 U.S. Dist. LEXIS 40197

at *8 (D. Md. Apr. 22, 2010) ("Buechler has sufficiently alleged willfulness. Unlike the

provision of FCRA at issue in *Safeco*, the FACTA provision Keyco allegedly violated is

unambiguous."); *In Re: The TJX Cos., Inc. Fair and Accurate Credit Transactions Act (FACTA)*

*Litig.*, 2008 U.S. Dist. LEXIS 38258 at *10 (D. Kan. May 9, 2008) ("courts have almost

uniformly rejected the argument that such allegations do not sufficiently allege willful violations

of the statute.") (collecting cases).

### b.     The Cases PSI Cites Are Readily Distinguishable.

PSI misstates that Plaintiff only alleged PSI had constructive knowledge of the five-digits

requirement based on publicity about the statute and the fact that other merchants were

complying with it. This ignores the totality of Plaintiff's allegations, discussed above, that show

PSI's actual awareness of the five-digits requirement, and why the cases PSI tries to compare this case to based on its misstatement of the facts are readily distinguishable.

PSI cites *Komorowski v. All-American Indoor Sports, Inc.*, 2013 U.S. Dist. LEXIS 125747 (D. Kan. Sept. 4, 2013), but in that case the plaintiff based its assertion of a "knowing" violation "solely on the fact that during the three year phase-in period for the relevant FACTA requirement, there was extensive publicity regarding those requirements." *Id.* at *5. Here, by contrast, and in addition to describing the publicity surrounding the statute's enactment in 2003, the publicity surrounding the amnesty granted for certain past violations of the statute in 2008, and the various judicial opinions implementing highlighting the statute, Plaintiff also alleges: (a) PSI was specifically informed by the credit card companies and its processor that it was not allowed to print more than the last five digits on point-of-sale receipts, (b) PSI contractually promised to comply with this obligation, and (c) PSI demonstrated its awareness of this obligation by having a written FACTA policy in place, and by complying with FACTA before installing its new payment system in 2015. (Dkt. 1 ("Complaint"), ¶13, ¶14-¶16, ¶19, ¶32)).

PSI also cites two cases that granted dismissal for failure to plead an "intent" to violate FACTA, but they are inapposite because there is no such requirement. *See Crupar-Weinmann v. Paris Baguette Am., Inc.*, No. 13 Civ. 7013, 2014 U.S. Dist. LEXIS 91119 at *14, n.2 (S.D.N.Y. Jun. 29, 2014) ("there is no suggestion at all in the Complaint that defendant *consciously included* the expiration date on its receipts."); *Vidoni v. Acadia Corp.*, No. 11-cv-448, 2012 U.S. Dist. LEXIS 59967 at *8-*9 (D. Me. Apr. 27, 2012) ("there must be some allegation that the Defendant knew of the standard and *voluntarily or intentionally violated it*.") (italics added). Similarly, another case Defendant cites found fault with the failure to allege a "motive" to violate the statute. *See Gardner v. Appleton Baseball Club, Inc.*, 2010 U.S. Dist. LEXIS 31653 at *17

23

(E.D. Wisc. Mar. 31, 2010) ("there is no suggestion of a motive in the complaint at all.") The Supreme Court holds that "willful" means "knowing" or "reckless," not "intentional." *See Safeco Ins. Co.*, 551 U.S. at 56, fn. 8 (rejecting an appellate opinion that "willfulness" required a showing that the defendant acted "knowingly and intentionally.")

A violation can be knowing without being intentional. Regardless, it should be obvious that printing ten digits of customer card numbers instead of no more than the last five digits had to be knowingly done because it is the result of computer programming. There is no way to accidently program a system to add digits to a receipt. Also, PSI had to know its system was printing receipts that revealed too much information because it is obvious from the face of the receipts. The complaint plausibly alleges PSI was aware because, regardless of why its system was violating FACTA, PSI knew about the five-digits requirement, it knew the contents of its receipts because it chose their content, and it was reminded of that choice each time its employees printed a receipt that displayed the first six and last four digits of the customer's credit card account number. (Dkt. 1, ¶33 and *see* Plaintiff's Declaration, attached as Exhibit 2, at ¶ 3 and Ex. A).

Finally, PSI cites *Rosenthal v. Longchamp Coral Gables LLC*, 603 F. Supp. 2d 1359 (S.D. Fla. 2009), *Miller-Huggins v. SpaClinic, LLC*, No. 09 C 2677, 2010 U.S. Dist. LEXIS 23418 (N.D. Ill. Mar. 11, 2010). These cases are distinguishable because unlike here, their plaintiffs only alleged facts to show the defendant *should have known* about FACTA's requirements, not that they actually knew them. *See Rosenthal*, 603 F.Supp.2d at 1361; *Miller-Huggins*, 2010 U.S. Dist. LEXIS 23418 at *3-*4; *see also Gardner*, 2010 U.S. Dist. LEXIS 31653 at *9. By contrast, as shown, Plaintiff alleges ample facts establishing PSI's awareness of the five-digit requirement, and the fact that despite that knowledge, it continued to violate it.

Indeed, once the plaintiff in *Rosenthal* added facts approaching what Plaintiff alleges here to show the defendant had been made aware of FACTA's requirements, the court refused to dismiss it. *See Rosenthal II*, 2009 U.S. Dist. LEXIS 59084 at *6 ("Plaintiff goes much further to describe the notice that Defendant received.") Likewise, *Gardner* expressly distinguished itself from cases, like the instant case, that allege that "credit card issuers like VISA, MasterCard, Discover and American Express informed [the defendant] about FACTA's requirements and required compliance via contract." *Gardner*, 2010 U.S. Dist. LEXIS 31653 at *11, *quoting Troy v. Home Run Inn, Inc.*, 2008 U.S. Dist. LEXIS 30038 (N.D. Ill. 2008). The *Gardner* court went on to note that the defendant minor-league ball club in that case had no reason to know about FACTA because "[t]he Timber Rattlers are not Wal-Mart." *Gardner* at *11-*12. With more than 150 retail stores, PSI *is* like Wal-Mart.

In short, the various district cases PSI cites do not justify its motion concerning Plaintiff's allegation that PSI's undisputed violation of FACTA's five-digits requirement was knowing, and to the contrary *Rosenthal* and *Gardner* support Plaintiff's position.

**2.      The Complaint Also Plausibly Alleges a Reckless Violation.**

Unlike for a "knowing" violation, "recklessness" is an objective standard. *Safeco*, 551 U.S. at 68-69. It does not require subjective knowledge of the law's requirements. *See Rosenthal*, 2009 U.S. Dist. LEXIS 59084 at *5-*6 (S.D. Fla. June 29, 2009), *citing Murray v. New Cingular Wireless Servs., Inc.* 523 F.3d 719, 726 (7th Cir. 2008). Instead, a violation is reckless "if it was 'objectively unreasonable' in light of 'legal rules that were 'clearly established' at the time.'" *Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d 241, 249 (3rd Cir. 2012), *quoting Safeco*, 551 U.S. at 69-70 ("*Safeco*'s reading of the statute, albeit erroneous, was not objectively unreasonable.")

Plaintiff's allegations easily clear this low bar. PSI's conduct was "objectively unreasonable" because it allowed its payment system to systematically print more than the last five digits of its customers' credit card account numbers on transaction receipts even though FACTA's ban on this practice is simple, absolute and unambiguous. *See Tchoboian v. FedEx Office & Print Servs.*, No. CV10-1008, 2011 U.S. Dist. LEXIS 158776 at *11 (C.D. Cal. Nov. 14, 2011) ("FACTA is unambiguous with respect to the limitations it imposes …. FACTA clearly prohibits the printing of 'more than the last 5 digits of the card number....'"); *Buechler*, 2010 U.S. Dist. LEXIS 40197 at *8 (§1681c(g)(1) "is unambiguous.") PSI cannot articulate any reasonable interpretation of the law that would allow it to print more than the last five digits of card account numbers on its transaction receipts in any circumstance. *See*, *e.g.*, *Redman*, 768 F.3d at 627 ("The known or obvious risk in this case would be failing to delete the expiration date on the consumer's credit-card or debit-card purchase receipt.") To be sure, there is no reasonable way to read FACTA to allow PSI to print the first six and last four digits of the card number on receipts, as it did here.

The five-digits requirement is also "clearly established." It has been on the books since 2003, its enactment was widely publicized (Dkt. 1, ¶9), all major credit card organizations put their merchants (including PSI) on notice of the requirement and contractually require them to comply with it (*Id.*, ¶13-¶14, ¶17-¶18), PSI's credit card processor would have put it on notice of the requirement as well (*Id.*, ¶29-¶30), in 2007 the FTC issued a business alert to merchants expressly warning that under FACTA "[y]ou may include no more than the last five digits of the card number" on transaction receipts (*Buechler*, 2010 U.S. Dist. LEXIS 40197 at *8), it was put back in the spotlight in 2008 when Congress gave amnesty for past violations of FACTA so long as the merchant wasn't violating the five-digits requirement (Dkt. 1, ¶15-¶16), it has remained

unchanged and continued to apply to all merchants in the eight years since, and numerous court decisions have addressed the requirement and universally held that printing more than five digits of the card account number on a transaction receipt is illegal. In short, Plaintiff has also plausibly alleged that PSI's violation of the five-digits truncation requirement was reckless.

PSI ignores the test for recklessness, and whether Plaintiff's allegations plausibly satisfy it. Instead, PSI just lumps that concept together with its discussion of whether Plaintiff sufficiently alleged a knowing violation, as if "willfulness" is defined by a single standard. The Supreme Court holds it is not. *Safeco*, 551 U.S. at 68-69.

PSI's arguments against the sufficiency of Plaintiff's allegation that PSI knew of its FACTA obligations have no bearing on whether has plausibly alleged its violation was reckless. Again, PSI's knowledge is irrelevant to recklessness, because "recklessness" is an objective standard, not subjective. *Id*.

The inapposite cases PSI cites to argue against a knowing violation do not help it on the recklessness issue either. Like PSI itself, the cases fail to differentiate between a "knowing" violation and a "reckless" violation, erroneously treating these two distinct concepts as one.[10]

The one case PSI cites that actually conducts a reckless violation analysis that is distinct from a knowing violation analysis, *Vidoni v. Acadia Corp.*, No. 11-cv-448, 2012 WL 1565128 (D. Me. Apr. 27, 2012), misstates the test for recklessness. Again, the Supreme Court holds that recklessness is an objective test that only asks if the "defendant's conduct was 'objectively unreasonable' in light of 'legal rules that were 'clearly established' at the time." *Fuges*, 707 F.3d at 249, *quoting in part Safeco*, 551 U.S. at 69-70. But *Vidoni* suggests recklessness also requires facts to show that printing more than the last five digits of a card number on a receipt creates "an

---

[10] See the discussion of *Crupar-Weinmann*, *Komorowski*, *Miller-Huggins* and *Gardner* above.

'unjustifiably high risk of harm'" to PSI's customers. *Vidoni* at *2. If that was correct, however, it would be harder to plead a reckless violation than a knowing violation. But it is not correct because:

> [t]his argument rests on an isolated excerpt from *Safeco* and, consequently, on an overly narrow reading of the Supreme Court's holding in that case. The Court in *Safeco* used the term 'risk of harm' only in the context of analogizing 'recklessness' in FACTA to the common law meaning of 'recklessness' in tort law. The significance of the Court's holding in *Safeco* was in reading the statutory language 'willfully fails to comply' as reaching reckless FCRA violations and in rejecting the defendant insurance companies' argument that the use of the term 'willfully' limits liability under § 1681n(a) to knowing violations. *Id.* at 2210. Thus, it is the reckless disregard of statutory duties (not harm) that makes a violation willful. *Id.* at 2208 (referring to reckless disregard of the law as willful), *Id.* at 2215 (discussing reckless disregard in terms of 'risk of violating the law'). Nowhere did the Court in *Safeco* suggest that the 'risk of harm' standard from tort law is incorporated into the FCRA.

*Ramirez v. Midwest Airlines, Inc.*, 537 F.Supp.2d 1161, 1169 (D. Kan. 2008); *see also Soualian v. Int'l Coffee & Tea, LLC*, No. CV 07-0502, 2008 U.S. Dist. LEXIS 91130 at *8 (C.D. Cal. Feb. 9, 2008) ("The Court also disagrees with Defendant's characterization of the reckless standard as requiring a risk of harm.")

Congress already determined that printing more than the last five digits of card numbers on transaction receipts creates an unacceptable risk of harm, so it passed a law categorically prohibiting it. *See, e.g., Redman*, 768 F.3d at 626 ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.") Accordingly, to plausibly allege a reckless violation, it is only necessary that PSI's practice of printing more than the last five digits on receipts could be viewed as unreasonable considering that the statute expressly prohibits that conduct. Plainly the conduct is unreasonable given what the statute says. *See Redman*, 768 F.3d at 627 ("The known or obvious risk in this case would be failing to delete [all but the last five digits of the card account number] on the consumer's credit-card or debit-card purchase

28

receipt.") Accordingly, even if the complaint does not plausibly allege a knowing violation of FACTA's five digits requirement (which it does), at the very least it plausibly alleges a reckless violation.

**Conclusion**

PSI's motion to dismiss for lack of standing under Federal Rule 12(b)(1) should be denied because PSI's request ignores and is contrary to binding Supreme Court and Eleventh Circuit precedent establishing that Plaintiff has standing to sue.

PSI's alternative request to stay pending the outcome of *Spokeo* should be denied because: (1) binding Eleventh Circuit precedent prohibits a stay based on *Spokeo*; (2) PSI has not and cannot meet its burden of proving exceptional circumstances exist to justify a stay, which will not avoid any material litigation, and (3) a stay would adversely affects Plaintiff and the class.

PSI's motion to dismiss for failure to state a claim under Federal Rule 12(b)(6) should be denied because Plaintiff adequately pleads a plausible claim in two ways.

Dated: May 5, 2016

Respectfully submitted,

/s/ *Scott D. Owens*          .
One of Plaintiff's Attorneys

Scott D. Owens, Esq.
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive
Suite 235
Hollywood, FL 33019
954−589−0588
Fax: 954−337−0666
Email: scott@scottdowens.com

Bret Leon Lusskin , Jr.
Bret Lusskin, P.A.
20803 Biscayne Blvd.
Ste. 302
Aventura, FL 33180
954−454−5841
Fax: 954−454−5844
Email: blusskin@lusskinlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 5, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties below, if any, who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Scott D. Owens _____
One of Plaintiff's Attorneys