United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Eric Kirchein, individually and on behalf of all others similarly situated, Plaintiffs<br><br>v.<br><br>Pet Supermarket, Inc., Defendant | )<br>)<br>)<br>)<br>) Civil Action No. 16-60090-Civ-Scola<br>)<br>)<br>)<br>) |

### Order Denying Motion to Vacate Preliminary Approval Order and Settlement and Reopen Case

This matter is before the Court on Defendant Pet Supermarket, Inc.'s ("Pet Supermarket's") Motion to Vacate Preliminary Approval Order and Settlement and to Reopen Case (ECF No. 53). The Court held a hearing on the Defendant's motion on December 21, 2017. After considering the briefs submitted by the parties, the relevant case law, the arguments made at the hearing, and for the reasons set forth below, the Court **denies** the Defendant's motion (**ECF No. 53**).

1. Background

On January 14, 2016, Plaintiff Eric Kirchein filed a putative class action alleging that the Defendant violated the Fair and Accurate Credit Transactions Act ("FACTA"), which prohibits printing "more than the last five digits of the credit card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). The Plaintiff alleged that the Defendant printed the first six and the last four digits of his credit card number on a receipt for a purchase he made at one of the Defendant's stores. (Compl. ¶ 25, ECF No. 1.)

On August 16, 2016, the Plaintiff moved for preliminary approval of a nationwide class action settlement. Pursuant to the settlement agreement, the Defendant agreed to pay $580,000 to a settlement fund, to be distributed pro rata among all class members who timely submitted a claim. (Mot. for Preliminary Approval 4, ECF No. 30.) The agreement defined the settlement class as:

> (i) All 29,490 persons in the United States (ii) who, when making payment for goods or services at a Pet Supermarket retail store

> located in the United States, (iii) made such payment using a credit or debit card (iv) and were provided with a point-of-sale receipt (v) which displayed more than the last 5 digits of said credit or debit card number (vi) between January 14, 2014, and present.
>
> Notwithstanding the foregoing, in compliance with 28 U.S.C. § 455, this class specifically excludes persons in the following categories: (A) The district judge and magistrate judge presiding over this case and the judges of the United States Court of Appeals for the Eleventh Circuit; (B) the spouses of those in category (A); (C) any person within the third degree of relationship of those in categories (A) or (B); and (D) the spouses of those within category (C).

(*Id.* at 5.) The Court certified the settlement class and preliminarily approved the settlement on August 22, 2016 (ECF No. 31).

Over the course of the next year, the parties moved to extend the deadline to send notice to the class on six separate occasions because of difficulties that the parties encountered in identifying and locating the settlement class members (ECF Nos. 32, 36, 40, 46, 48, 50). Finally, on October 2, 2017, the Defendant moved to vacate the preliminary approval order and settlement and reopen the case because the parties had learned that the size of the class identified in the settlement agreement was incorrect. (Mot. 1.) Specifically, the Defendant asserted that the parties discovered that the actual settlement class size should be 33,246 rather than 29,490, and the Plaintiff demanded an increase in the settlement amount in order to compensate for the additional class members. (*Id.* at 2-3.) Since the parties were unable to reach an agreement on a new settlement amount, the Defendant notified the Plaintiff that it was withdrawing from further negotiations and would be moving to reopen the case. (*Id.* at 3.) The Defendant's motion argues that the settlement agreement is the product of a mutual mistake in the number of class members, and that the number of class members is an essential term of the contract. (*Id.* 4.) In response, the Plaintiff asserts that the original settlement agreement is still valid and binding. (Pl.'s Resp., ECF No. 56.)

### 2. Analysis

Under Florida law,

> A court of equity has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument. The term 'mutual mistake of fact' is one of law, and the equitable remedy of rescission is available only if the

> mistake is mutual and the fact is of the essence of the contract. A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument.

*Dantzler, Inc. v. PNC Bank, Nat. Ass'n*, 946 F. Supp. 2d 1344, 1369 (S.D. Fla. 2013) (Altonaga, J.) (internal quotations and citations omitted).

Here, both parties agree that the class size identified in the settlement agreement is incorrect. At the hearing, both parties also recognized that it is atypical for a class action settlement to identify the number of class members. The settlement agreement specifically states that the Defendant "determined that it is desirable that the Litigation be fully, completely, and finally settled . . . ." (Settlement Agreement 4-5, ECF No. 30-1.) Therefore, the intention of the parties was that the class identified in the settlement agreement and certified by the Court include all individuals who made a purchase at a Pet Supermarket store and were provided with a point-of-sale receipt which displayed more than the last 5 digits of the customer's credit or debit card number during the timeframe identified in the agreement. If the additional 4,000 class members subsequently identified by the parties were excluded from the class definition, it would defeat the intention of the parties to completely resolve this matter.

However, the Court disagrees with the Defendant that vacating the settlement agreement in its entirety is the appropriate remedy. The error made by the parties in their initial identification of the number of class members was essentially a scrivener's error. The class members' pro rata share of the settlement amount would be $19.76 for a class size of 29,490 (assuming that all class members opted in), and $17.45 if the class size is adjusted to include the additional individuals identified by the parties. FACTA provides for statutory damages of not less than $100 and not more than $1,000 if the defendant's noncompliance is willful. 15 U.S.C. § 1681n(a)(1)(A). Thus, the difference in the pro rata distribution as a percentage of the available statutory damages ranges from 0.23% for damages of $1,000 to 2.3% for damages of $100. This difference is relatively minor, and the impact on the existing class members of amending the class definition to include the 4,000 additional individuals would be minimal.

At the hearing, counsel for the class represented that they are not opposed to amending the class definition to include the additional 4,000 potential class members. Such a remedy would have no detrimental impact to the Defendant since their financial obligation would remain unchanged. In fact, such an amendment would be beneficial to the Defendant, as it would reform

the settlement agreement to conform to the Defendant's intention that this matter be fully and finally resolved.

Therefore, since the parties agree that the class size identified in the settlement agreement was the result of a mutual mistake, and since the agreement expresses the intention of the parties to fully resolve this matter, the Court hereby **amends** Paragraph 2 of its Order Certifying Settlement Class, Granting Preliminary Approval of Settlement, Directing Notice to the Class, and Adminstratively Closing Case (**ECF No. 31**) as follows:

> 2. The Settlement Class is defined as follows:
>
> (i) All 33,246 persons in the United States (ii) who, when making payment for goods or services at a Pet Supermarket retail store located in the United States, (iii) made such payment using a credit or debit card (iv) and were provided with a point-of-sale receipt (v) which displayed more than the last 5 digits of said credit or debit card number (vi) between January 14, 2014, and present.
>
> Notwithstanding the foregoing, in compliance with 28 U.S.C. § 455, this class specifically excludes persons in the following categories: (A) The district judge and magistrate judge presiding over this case and the judges of the United States Court of Appeals for the Eleventh Circuit; (B) the spouses of those in category (A); (C) any person within the third degree of relationship of those in categories (A) or (B); and (D) the spouses of those within category (C).

### 3. Conclusion

Accordingly, the Court **denies** the Defendant's Motion to Vacate Preliminary Approval Order and Settlement and to Reopen Case (**ECF No. 53**). However, the Court notes that at the hearing, the Defendant raised the issue of this Court's subject matter jurisdiction in light of several recent decisions concerning standing in FACTA cases. As the Eleventh Circuit has recognized, "every federal court operates under an independent obligation to ensure it is presented with the kind of concrete controversy upon which its constitutional grant of authority is based; and this obligation on the court to examine its own jurisdiction continues at each stage of the proceedings . . . ." *Hallandale Prof'l Fire Fighers Local 2238 v. City of Hallandale*, 922 F.2d 756, 759 (11th Cir. 1991) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990)). Therefore, the Court directs the Defendant to submit a brief analyzing whether the Court

Case 0:16-cv-60090-RNS   Document 71   Entered on FLSD Docket 12/22/2017   Page 5 of 5

has subject matter jurisdiction over this case on or before **January 4, 2018**. The Plaintiff may submit a response on or before **January 18, 2018**.

**Done and ordered**, at Miami, Florida, on December 22, 2017.

_____
Robert N. Scola, Jr.
United States District Judge