United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Eric Kirchein, individually and on behalf of all others similarly situated, Plaintiffs<br><br>v.<br><br>Pet Supermarket, Inc., Defendant | )<br>)<br>)<br>)<br>) Civil Action No. 16-60090-Civ-Scola<br>)<br>)<br>)<br>) |

### Order Dismissing Case for Lack of Subject Matter Jurisdiction

During a hearing on December 21, 2017 on Defendant Pet Supermarket, Inc.'s ("Pet Supermarket's") Motion to Vacate Preliminary Approval Order and Settlement and to Reopen Case, the Defendant raised the issue of subject matter jurisdiction. (*See* Order 4, ECF No. 71.) The Court subsequently ordered the parties to submit briefs analyzing whether this Court has subject matter jurisdiction over the Plaintiff's claims. (*Id.* at 4-5.) Having reviewed the parties' briefs, the relevant case law, and the record, the Court **dismisses** this case for lack of subject matter jurisdiction.

1. **Background**

On January 14, 2016, Plaintiff Eric Kirchein filed a putative class action alleging that the Defendant violated the Fair and Accurate Credit Transactions Act ("FACTA"), which prohibits printing "more than the last five digits of the credit card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). The Plaintiff alleged that the Defendant printed the first six and the last four digits of his credit card number on a receipt for a purchase he made at one of the Defendant's stores. (Compl. ¶ 25, ECF No. 1.)

On August 16, 2016, the Plaintiff moved for preliminary approval of a nationwide class action settlement. Pursuant to the settlement agreement, the Defendant agreed to pay $580,000 to a settlement fund, to be distributed pro rata among all class members who timely submitted a claim. (Mot. for Preliminary Approval 4, ECF No. 30.) The agreement defined the settlement class as:

> (i) All 29,490 persons in the United States (ii) who, when making payment for goods or services at a Pet Supermarket retail store

located in the United States, (iii) made such payment using a credit or debit card (iv) and were provided with a point-of-sale receipt (v) which displayed more than the last 5 digits of said credit or debit card number (vi) between January 14, 2014, and present.

(*Id.* at 5.) The Court certified the settlement class and preliminarily approved the settlement on August 22, 2016 (ECF No. 31).

Over the course of the next year, the parties moved to extend the deadline to send notice to the class on six separate occasions because of difficulties that the parties encountered in identifying and locating the settlement class members (ECF Nos. 32, 36, 40, 46, 48, 50). Finally, on October 2, 2017, the Defendant moved to vacate the preliminary approval order and settlement and reopen the case because the parties had learned that the size of the class identified in the settlement agreement was incorrect. (Mot. 1.) Specifically, the Defendant asserted that the parties discovered that the actual settlement class size should be 33,246 rather than 29,490, and the Plaintiff demanded an increase in the settlement amount in order to compensate for the additional class members. (*Id.* at 2-3.)

After a hearing, the Court denied the Defendant's motion to vacate the preliminary approval order. However, the Court noted that at the hearing, the Defendant raised the issue of this Court's subject matter jurisdiction in light of several recent decisions concerning standing in FACTA cases.

**2. Legal Standard**

Article III of the Constitution grants federal courts judicial power to decide only actual "Cases" and "Controversies." U.S. Const. Art. III § 2. The doctrine of standing is a "core component" of this fundamental limitation that "determin[es] the power of the court to entertain the suit." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264–65 (11th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Since standing "involves the court's competency to consider a given type of case, it cannot be waived or otherwise conferred upon the court by the parties." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (internal quotations and citations omitted). A plaintiff has standing to bring a claim if the following three elements are met: (1) the plaintiff has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560 (citations omitted). At the pleading stage, the plaintiff must clearly allege facts

demonstrating each of these elements. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotations and citations omitted).

Pet Supermarket contests only the first element. An injury in fact is "an invasion of a legally protected interest which is (1) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S. Ct. at 1548 (internal quotations and citations omitted). For an injury to be concrete, the "injury must be 'de facto'; that is, it must actually exist." *Id.* An injury need not be tangible in order to be concrete. *Id.* at 1549.

The United States Supreme Court's decision in *Spokeo, Inc. v. Robins* clarified the standing requirements implicated in lawsuits where plaintiffs are afforded statutory damages for violations of federal statutes. 136 S. Ct. 1540. The Court noted that "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* at 1549. The Court held that while "a bare procedural violation, divorced from any concrete harm" cannot satisfy the injury-in-fact requirement, a "risk of real harm" can satisfy the injury-in-fact requirement. *Id.* (citations omitted). Thus, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact; in such a case, a plaintiff need not allege any *additional* harm beyond the one identified by Congress." *Id.* (emphasis in original) (citations omitted).

### 3. Analysis

In *Gesten v. Burger King Corporation*, No. 17-22541, 2017 WL 4326101 (S.D. Fla. Sept. 27, 2017) (Scola, J.), this Court, relying primarily on *Spokeo* and precedent from the Second and Seventh Circuits, held that the plaintiff's allegation that the defendant had printed the first six and last four digits of his credit card account number on a receipt was insufficient to establish standing to pursue a FACTA claim because the plaintiff did not allege that any disclosure of his private information actually occurred. The Court noted that multiple courts have recognized that the first six digits of a credit card account number only identify the issuer of the card, which is information that Congress has not prohibited from being separately printed on a receipt. *Id.* at *5. Here, Kirchein similarly alleges that he was provided with receipts that displayed the first six and last four digits of his credit card account number, but does not allege that anyone saw the receipt or that he suffered any actual harm. (Compl., ECF No. 1.) Therefore, relying on *Gesten* and from the Second Circuit, Seventh Circuit, and various district courts across the country, Pet Supermarket argues that Kirchein does not have standing.

In response, Kirchein first argues that the Court does not need to have subject matter jurisdiction over the claims in the Complaint because it has jurisdiction to enforce the parties' settlement agreement. Second, Kirchein argues that *Gesten* and the cases on which it relied were incorrectly decided. The Court will address each argument in turn.

### A. Whether the Court has Subject Matter Jurisdiction

Kirchein asserts that a settlement agreement remains enforceable despite subsequent developments in the law, and that "'standing is not a prerequisite to settling disputed claims. It is only a limitation on the court's power to decide the merits . . . of the legal issues the dispute presents." (Resp. 1-3, ECF No. 74.) Kirchein has cited to one case in which a district court declined to dismiss a class action case for lack of standing after a settlement agreement had been reached. *Schumacher v. SC Data Center, Inc.*, 16-cv-04078, 2016 WL 7007539 (W.D. Mo. Nov. 19, 2016). The court framed the issue as whether the court had subject matter jurisdiction to enforce the parties' settlement agreement, rather than whether the court had subject matter jurisdiction over the underlying claims. *Id.* at *1. The court relied primarily on *Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3rd Cir. 2010), in which the Third Circuit held that the passage of legislation that eliminated the plaintiffs' cause of action did not affect the validity of a class action settlement agreement. In holding that the legislation did not moot the settlement agreement, the Third Circuit relied on three principles:

> First, there is a restricted, tightly focused role that Rule 23 prescribes for district courts, requiring them to act as fiduciaries for the absent class members, but that does not vest them with broad powers to intrude upon the parties' bargain. Second, a strong public policy exists, which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation. Third, our jurisprudence holds that changes in the law after a settlement is reached do not provide ground for rescission of the settlement.

*Id.* at 593. The majority opinion in *Ehrheart* did not explicitly discuss standing.

Unlike the legislation at issue in *Ehrheart*, neither *Gesten* nor *Spokeo* constitute a change in the law. *Spokeo* simply relied on and clarified well-established principles of standing in order to analyze whether a violation of the Fair Credit Reporting Act's procedural requirements was sufficiently concrete. There is a significant difference between the proposition that changes in the law after a settlement is reached do not provide ground for rescission of the

settlement and the proposition that a court must have subject matter jurisdiction at all stages of a case. Indeed, the dissenting opinion in *Ehrheart* noted that a district court's duties under Federal Rule of Civil Procedure Rule 23 "cannot expand the boundaries of federal court jurisdiction under Article III." *Id.* at 597. Moreover, at least one district court denied a motion to preliminarily approve a class action settlement agreement where the plaintiff lacked standing, and another has analyzed whether it had subject matter jurisdiction before proceeding to consideration of a motion for final approval of a class action settlement. *See Zink v. First Niagara Bank, N.A.*, 155 F.Supp.3d 297 (W.D.N.Y. 2016) (adopting recommendation from magistrate judge to deny uncontested motion to preliminarily approve class action settlement agreement because the plaintiff did not establish that the court had subject matter jurisdiction); *Villanueva v. Wells Fargo Bank, N.A.*, No. 13-cv-5429, 2017 U.S. Dist. LEXIS 97809 (S.D.N.Y. Jan. 25, 2017) (analyzing whether the court had subject matter jurisdiction before considering whether to issue final approval of the parties' class action settlement agreement).

This Court respectfully disagrees with the district court in *Schumacher* that *Ehrheart* stands for the proposition that a court does not need to have subject matter jurisdiction over the underlying claims in a case in order to approve a class action settlement agreement under Rule 23. The Court simply cannot square the *Schumacher* opinion with the mandate that "once a court determines that there has been no grant [of jurisdiction] that covers a particular case, the court's sole remaining act is to dismiss the case for lack of jurisdiction." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) (citing *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)). The Eleventh Circuit has made clear that "a federal court must inquire *sua sponte* into the issue *whenever* it appears that jurisdiction may be lacking." *Id.* (emphasis added) (citing *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985)).

Rule 23(e) specifically describes a class settlement agreement as a "proposed settlement," and provides that "the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Thus, there is substantive work that remains to be done by the Court in this case. If the Court does not have subject matter jurisdiction over the underlying claims, the Court cannot see how it can hold a fairness hearing and issue an order approving the parties' proposed settlement agreement. To the contrary, the only option available to the Court is to dismiss this case.

Kirchein also argues that the Rules Enabling Act prevents the Court's dismissal of this action. The Rules Enabling Act essentially prohibits the Federal Rules of Civil Procedure from abridging, enlarging, or modifying any

substantive right. 28 U.S.C. § 2072. However, the Court's decision is not based upon the Federal Rules of Civil Procedure; rather, it is based upon the constitutional limitations on the jurisdiction of federal courts.

### B. Whether *Gesten* Was Incorrectly Decided

Kirchein argues that *Gesten* was incorrectly decided for a variety of reasons. First, Kirchein argues that *Gesten* and the cases on which it relied incorrectly found that the risk of identity theft is not materially increased by the disclosure of the first six digits of a credit card account number. (Resp. 4-5.) The Court disagrees. Kirchein's assertions do not establish that disclosure of the first six digits of a credit card account number results in an imminent, real risk of harm.

However, even assuming that Kirchein is correct, he has failed to address *Gesten's* ultimate holding that the plaintiff did not have standing because he failed to allege "that any disclosure of his private information actually occurred." 2017 WL 4326101, at *5. The Court specifically stated that "the 'heightened risk of identity theft' alleged in the Complaint is a risk that has not, and could not, materialize in this instance" because Gesten had taken control of the receipt at the time it was issued. *Id.* Kirchein has similarly failed to allege that any disclosure of his information actually occurred. Kirchein asserts in his brief that his credit card information was disclosed to store employees and that he was forced to take action to secure the receipt or destroy it. (Resp. 14-15.) The Court addressed an identical allegation that information was disclosed to store employees in *Gesten*, noting that "this 'disclosure' is no different than the 'disclosure' that happens any time a consumer uses a credit card to pay for a transaction." 2017 WL 4326101, at *5. Moreover, neither of these allegations are set forth in the Complaint. The sole allegations in the Complaint concerning any injuries suffered by Kirchein are that he received a receipt displaying the first six digits of his account number, that the first six digits reveal the brand of credit card and the issuing bank, and that he has been "exposed to an elevated risk of identity theft." (Compl.¶¶ 25, 39, 62.) These allegations are insufficient to establish that Kirchein suffered an actual injury or a real risk of harm.

Next, Kirchein argues that *Gesten* and the cases on which it relied do not give proper deference to Congress's judgment in enacting FACTA, and did not correctly determine that printing additional digits of an account number is a procedural, as opposed to a substantive, violation. (Resp. 5-14.) The Court reviewed and analyzed the vast majority of the authority cited by Kirchein in *Gesten*. Neither the new cases cited by Kirchein nor the arguments that he has raised persuade the Court that its analysis in *Gesten* was erroneous.

### 4. Conclusion

Accordingly, the Court **dismisses** this case without prejudice for lack of subject matter jurisdiction.

**Done and ordered**, at Miami, Florida, on February 8, 2017.

---

Robert N. Scola, Jr.
United States District Judge